WESTERN ELECTRIC CO. v. KINLOCH TEL. CO. et al.

(Circuit Court, E. D. Missouri, E. D. June 7, 1901.)

No. 4,214.

PATENTS—INFRINGEMENT—LIGHTNING ARRESTER.
   The White patent, No. 438,788, for a potential discharging protector or lightning arrester for making an earth connection with an electric circuit, construed, and *held* infringed as to claim 1, and not infringed as to claim 4.

In Equity. Suit for infringement of patent. On final hearing.

Geo. P. Barton and De Witt C. Tanner, for complainant.
Chas. C. Bulkley, for defendants.

MARSHALL, District Judge. This is a bill in equity for an injunction and the recovery of damages for the infringement of letters patent No. 438,788, dated October 21, 1890, issued to Anthony C. White for a potential discharger or lightning arrester. The patented device consists of two carbon plates mounted parallel to each other, and only separated by a thin dielectric. The solid portion of this dielectric, which is preferably of mica, is slotted so as to permit of disruptive electric discharges through the air space separating the plates. The upper plate has a plug of easily fusible metal or alloy fixed in a hole in its surface. In use one of these plates is connected electrically with a telegraphic or telephonic circuit and the other with the earth. The purpose of the patented device is to protect telegraphic or telephonic apparatus from injury due to lightning or to the accidental crossing of the circuit by electric circuits conducting

powerful currents under high potential. The trespassing current of high potential seeks a short path to the earth. It breaks down the air dielectric between the carbon plates, and a spark or disruptive discharge from plate to plate results. If the current is of small volume, the spark is all, but, if of any considerable volume, an arc forms, and heat ensues. The fusible plug melts, and, running down, forms a conducting union between the carbon plates. The resistance to the current at once ceases, the metal cools, and a permanent earth connection is made. The following are the claims alleged to have been infringed by the defendants:

"(1) A potential discharging protector or lightning arrester comprising two conducting plates placed with parallel surfaces closely adjacent to each other, adapted to be connected, respectively, with an electric circuit and the earth, and an interposed thin dielectric, one of the said plates having a plug or mass of easily fusible conducting material imbedded in its approximate surface, substantially as hereinbefore described, and for the purposes specified."

"(4) A protecting appliance comprising two carbon plates interposed between the conductor of an electric circuit and an earth connection, and connected, respectively, therewith, the said plates having their opposing surfaces roughened, as described herein, and placed closely adjacent to each other, but electrically separated by an interposed thin dielectric, as described, whereby the disruptive discharge of a dangerous potential from an electric circuit to earth may be effected, and means, such as a mass of fusible metal or alloy, for automatically establishing conductive union between the said plates upon the development of an electric arc between them, substantially as described."

The device used by defendants is similar to the complainant's, with the exception that in it the carbon plates are held apart by a silk dielectric which is not slotted; and instead of the alloy plug of the White arrester each of the defendants' carbon plates contains in a conical recess a lead pellet or shot, held in its place by a small quantity of beeswax. The opposing surfaces of the plates are not specially roughened, but are as smooth as the ordinary process of manufacture permits. It is claimed that these differences so distinguish the devices that the defendants cannot be held to be infringers. Although the validity of the complainant's letters patent was, on the hearing, admitted, and it is only a question of infringement, it will facilitate a discussion of that question to consider just what White's invention was. There had been lightning arresters before this invention. One method was to mount metallic plates parallel to each other, and only separated by a thin dielectric. When one of these plates was electrically connected with the line and the other with the ground, currents of high potential would be diverted from the line. But it was found that even the momentary discharges form plate to plate due to currents of high potential and small volume caused threads of the substance of the plates to form, connecting the plates. Thereafter, while the arrester would work effectually, it would short-circuit the line, and so divert from it the currents of low intensity necessary to its operation. At the time of White's invention it involved no inventive skill to substitute carbon plates for the metal plates before used. The carbon plates are highly refractory, and the threads of the metal plates are obviated. But

when persisting currents of high intensity get on the line an arc is formed between the carbon plates. Great heat is generated, and danger from fire ensues if means are not used to connect the plates conductively so as to lessen the resistance. The carbon plates, in remedying one evil, brought another in its place. The latter defect was remedied by the insertion in one of the plates of the plug of easily fusible conducting material. White's invention then consisted in an arrester which would divert currents of high potential and small volume without impairing the working of the line or its own efficiency, and which would also divert a persisting current of high potential by the forming of a conducting union between the plates. While not a pioneer invention, it marked a decided advance in the art. In the first claim of the patent in suit one of the elements is a "plug or mass of easily fusible conducting material," and the defendants claim that the lead shot of their device are not easily fusible, within the meaning of this claim. In practice the shot used in, the defendant's arrester sometimes, but rarely, melt. When a current of high potential persists, the wax melts, releases the shot, and they falling together form the permanent conducting union between the plates, provided the silk dielectric is then burned away at its approximate center. If the silk be not burned away, it holds the shot apart, and the union is not formed until it is so burned. The melting of the shot is at no time essential to the operation of the defendants' device, while in the White arrester the fusible plug is only released by its own fusion. The permanent conducting connection formed by the complainant's device under a persistent current of high voltage does not, however, depend on the melting of the entire plug. It is sufficient if it melts superficially, so as to be released from the hole in which it is held. So that the essential difference. is that the defendants used a cement of wax, which is not a conductor, and melts at a slightly lower degree of heat than the alloy used in White's arrester; and a lead shot, which is a conductor, and fuses at a slightly higher degree of heat than the alloy, instead of the homogeneous fusible plug of the White patent. The two devices operate in substantially the same way. In each the spark discharges do not develop sufficient heat to release the metallic conducting mass. But, when an arc is formed, heat is generated sufficient to release the plug or shot by the fusing of an easily fusible material. It does not matter that in the one case the material fused is itself a conductor and in the other is not. In both cases a conductor is released, and the same result is produced in substantially the same way. But the defendants assert that the wax used in their device is but a workshop expedient for convenience in the assembling of the parts; that it is to hold the shot until the parts are assembled. After that the silk dielectric is said to prevent the coming together of the shot and the short-circuiting of the line. But it appears that in practice the silk dielectric is sometimes burned away at a point which would permit the loose shot to come together, although the heat is not sufficient to melt the wax. In such case the wax plays an important part in the operation of the device. Without it the line would be short-circuited, and with it the operation of the line

111 F.—12

is not interfered with, and the arrester remains in a working condition. So that, however useful the wax may be as a workshop expedient, it is also a useful feature of the completed device. The defendants also base an argument on the carbonizable character of the dielectric used by them. White, in describing his invention, expressed a preference for mica as the solid portion of the dielectric separating the carbon plates, "because carbonizable dielectrics,—such as paraffined paper,—which are often used, when perforated by spark or flash discharges, frequently leave a carbonized edge round the perforation, which develops into a perfect and permanent earth connection." But the inventor did not limit himself to a special dielectric. In claim 1 of the patent the only expressed limitation is that the dielectric shall be thin, and in the description he especially recognizes that carbonizable dielectrics may be used. I think the defendants' device infringes the first claim of the White patent.

As to claim 4 a different question is presented. The carbon plates claimed are plates having their opposing surfaces roughened. In his specifications the patentee states:

"I also prefer to roughen the opposed surfaces of both carbon plates, such roughened surfaces being virtually composed of a large number of interspersed points and depressions, it having been experimentally ascertained that such a formation facilitates discharge and prevents short-circuiting of the plates."

It seems that, as originally applied for, claim 4 differed from the present claim 4 of the patent in the omission of the words "such as a mass of fusible metal or alloy." It was rejected. The patentee amended the claim by the insertion of the words quoted, and said by way of argument:

"Claim 4 is designed to cover substantially the structure of the other claims, with the further limitation that the carbon plates have their opposing surfaces roughened."

In the manufacture of its plates the complainant makes them rough by grinding them on an abrading wheel. It is evident that the roughness described in the fourth claim is a necessary element of the claim, and is intended to be something different from the roughness necessarily incidental to the manufacture of the carbon plates when roughness is not sought. Within the meaning of the fourth claim of the patent, the carbon plates of defendants' device do not have their opposed surfaces roughened, and this claim is not infringed.

It follows that the complainant is entitled to a decree against the defendants for an infringement of the first claim of letters patent No. 438,788, and for the usual injunction and accounting.