KINLOCH TEL. CO. et al. v. WESTERN ELECTRIC CO.

(Circuit Court of Appeals, Eighth Circuit. February 24, 1902.)

No. 1,640.

1. PATENTS—DEVICE NOT CLAIMED ABANDONED.

Where a patentee has made his claim, he has thereby disclaimed and abandoned to the public all other combinations and improvements that are not mere invasions of the device, combination, or improvement which he claims.

2. SAME—CLAIM SECURES MECHANICAL EQUIVALENTS.

But one who claims and secures a patent for a new machine or combination thereby necessarily claims and secures a patent for every mechanical equivalent of that machine or combination, because, in the light of the patent law, every mechanical equivalent of a device is the same thing as the device itself.

3. SAME—MECHANICAL EQUIVALENTS.

Where form is not the essence of the invention, machines or combinations which are constructed upon the same principle, which have the same mode of operation, and which accomplish the same result by the same or by equivalent mechanical means, are mechanical equivalents, within the meaning of the patent law, although they differ in form or in name.

**4. SAME—MECHANICAL EQUIVALENTS.**

Shot and wax or other fusible material holding them in perforations in the faces of conducting plates until released by the heat of the plates, produced by a persistent arc between them, so that they will then run down between the plates and form a conducting link, are mechanical equivalents of the mass or plug of fusible material described in patent No. 438,788, when they are used in a potential discharger for the same purpose and perform the same function as that plug.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Charles C. Bulkley, for appellants.

George P. Barton and De Witt C. Tanner, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree which enjoined the defendants, the Kinloch Telephone Company and Samuel M. Kennard, from infringing upon the first claim of letters patent No. 438,788, for a potential discharger, issued October 21, 1890, to Anthony C. White. (C. C.) 111 Fed. 175. This is the claim:

"(1) A potential discharging protector or lightning arrester comprising two conducting plates placed with parallel surfaces closely adjacent to each other, adapted to be connected, respectively, with an electric circuit and the earth, and an interposed thin dielectric, one of the said plates having a plug or mass of easily fusible conducting material embedded in its approximate surface, substantially as hereinbefore described, and for the purposes specified."

The device protected by this claim consists of an upper conducting plate, preferably of carbon, electrically connected with the line to be protected, and provided with a perforation in its lower surface filled with a plug of some easily fusible material or alloy, a lower conducting plate of carbon electrically connected with the earth by wire, and a thin dielectric partition, preferably of mica, slotted in the middle opposite the fusible plug, and securely fastened between, and in contact with, the plates. The purpose of this combination is to protect telephone and other apparatus used in connection with electric currents of low intensity from injury by means of currents of electricity of high potential which occasionally intrude upon telephone and telegraph wires when they are accidentally crossed with electric currents conducting heavy electric and power currents developed under high potential, or when, by induction or a stroke of lightning, atmospheric electricity charges them. The patentee stated the object he sought to attain in his specifications very clearly, in the following terms:

"The object of my present invention is to provide an improved form of the second element of this system of protection, namely, the lightning arrester or potential discharger, which can be applied with equal facility to either metallic or earth completed circuits; which shall not involve the normal conductive connection of an earth wire to the circuit; which can readily be adjusted to discharge with any given or desired potential; which shall be equally efficient whether the charge coming on the circuit be a transient and instantaneous impulse, as in the case of lightning, or a sustained and protracted impulse, as in the case of a cross with a dynamo circuit operated under any electro-motive force exceeding the minimum to which the appliance is set, and which in the latter event will rapidly and

certainly establish a short circuit to earth, thereby effecting a discharge which is permanently maintained as long as the charge continues, and preventing the said charge, irrespective of the period of its continuance, from causing injury to cable or apparatus."

The combination which White described and claimed accomplishes the purpose for which he constructed it. The conducting plates are located at such a distance apart that the air dielectric in the slot of the partition prevents the legitimate operating currents of the circuits with which the device is connected from leaving those circuits, and they pass on and perform their appropriate work. If, however, a transient charge of electricity of dangerously high potential, due either to lightning, a momentary dynamo cross, or to any other similar accident, intrudes upon the line, this charge passes to the earth by means of a disruptive discharge across the dielectric of air between the plates. If such a charge persists, the sparks of discharge develop into an arc between the plates through which a current passes to the earth. This current heats the plates and fuses the material composing the plug. As this material melts, it runs down into the slot between the plates and forms a conducting link between them. The current then follows this link, the arc is extinguished, the fused metal cools and forms a solid and permanent conductor between the plates, which safely leads the trespassing current to the earth. In this way the legitimate operating currents of the protected lines are repelled by the thin dielectric, and prevented from short-circuiting to the earth through the potential discharger, while both the transient and persisting charges of dangerous intensity are led off the line and to the earth by it, without injury to the telephone or other apparatus connected with the protected lines.

The novelty, utility, and patentability of this combination are conceded. But the decree of the court below is challenged on the ground that the device used by the appellants does not infringe upon the patent to White. The appellants' device consists of two plates of the same character, electrically connected and used in the same way as the conducting plates of White, a silk dielectric partition between them, and two leaden balls or shot secured by wax, one in a perforation in the inner surface of the upper plate, and the other in a hole in the inner surface of the lower plate. The appellants do not claim to escape liability for infringement on account of the substitution of the silk dielectric for the slotted mica partition, because White describes and claims a thin dielectric of any suitable material, and his slotted partition is only the preferable form of that dielectric. The shot secured in the plates by wax discharge the function of White's fusible plug. A transient charge of dangerous intensity produces a disruptive discharge through the interstices in the silk partition. When this discharge continues, forms an arc, and develops sufficient heat, the silk is burned away, the wax is melted, the shot roll down together and form a conducting link between the plates, through which the dangerous current is led to the earth. The arguments advanced in support of the contention that this device of the appellants does not infringe upon that of White are (1) that the patentee, by the terms of his claim and specification, restricted his monopoly to the

use of a "plug or mass of easily fusible conducting material" to consti-
tute the conducting link between the carbon plates, and the defendants
do not use easily fusible material for that purpose, but leaden balls or
shot, which cannot be readily fused; and (2) that, when attention is
given to the parts which really do the work, the device of the appellants
does not perform its function in substantially the same way as the de-
vice of White, because the wax, the fusible material of the appellants,
is not essential to the operation of their combination, but is a mere
means of assembling and holding the parts of the device in its construc-
tion, while the fusible material of White is indispensable to the opera-
tion of his device.

It is true that the statute requires the inventor to particularly point
out and distinctly claim the improvement or discovery which he seeks
to secure (Rev. St. § 4888), and that when he has made his claims he
has thereby disclaimed and abandoned to the public all other combi-
nations and improvements that are not mere invasions of the device,
combination, or improvement which he claims.   Keystone Bridge Co.
v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Manufacturing Co.
v. Sargent, 117 U. S. 373, 378, 6 Sup. Ct. 931, 29 L. Ed. 950; McClain
v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800;
McBride v. Kingman, 97 Fed. 217, 223, 38 C. C. A. 123, 129–130;
Building Co. v. Eustis, 65 Fed. 804, 807, 13 C. C. A. 143, 145, 27 U. S.
App. 693, 709; Stirrat v. Manufacturing Co., 61 Fed. 980, 984, 10
C. C. A. 216, 220, 27 U. S. App. 13, 47; Adams Electric R. Co. v.
Lindell R. Co., 77 Fed. 432, 451, 23 C. C. A. 223, 241, 40 U. S. App.
482, 514.   But it is no less true that a copy of the thing described and
claimed in a patent, either without variation, or with such variations as
are consistent with its being in substance the same thing, is, for all the
purposes of the patent law, the same device or combination as that
described in the patent.   Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed.
650.   One who claims and secures a patent for a new machine or com-
bination thereby necessarily claims and secures a patent for every me-
chanical equivalent for that device or combination, because, within the
meaning of the patent law, every mechanical equivalent of a device is
the same thing as the device itself.   Moreover, in determining what is
a mechanical equivalent of a given device, where, as in the case at bar,
form is not the essence of the invention, forms and names are of little
significance.   The similarities and differences of machines and com-
binations are to be determined by the offices or functions which they
perform, by the principles on which they are constructed, and by the
modes which are used in their operation.   A device which is con-
structed on the same principle, which has the same mode of operation,
and which accomplishes the same result as another by the same or by
equivalent mechanical means, is the same device, and a claim in a pat-
ent of one such device claims and secures the other.   Machine Co.
v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.   Mere changes of the
form of a device or of some of the mechanical elements of a combina-
tion secured by a patent will not avoid infringement, where the prin-
ciple or mode of operation is adopted, unless the form of the machine
or of the elements changed is the distinguishing characteristic of the
invention.   National Hollow Brake Beam Co. v. Interchangeable

Brake Beam Co., 106 Fed. 693, 711, 45 C. C. A. 544, 562; Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 178, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859.

In the light of these principles of law, how can the contention of the appellants be sustained? It is conceded that the wire connections, the plates of the appellants' combination, and their silk dielectric are the mechanical equivalents of the like connections, the plates, and the slotted dielectric of the patented device. It is conceded that the appellants' combination performs the same function discharged by that of the complainant. The only question is whether the means used by the appellants to produce the metallic conducting link between the plates are the mechanical equivalents of the plug of easily-fusible material adopted by White. The principle on which White's device for the production of this conducting link is constructed is to secure the material for it in the face of one of the plates until it is released by the heat of the plate after an arc has been formed between the plates. The device of the appellants is constructed upon the same principle. The shot are held in holes in the faces of the plates until the heat produced by the arc between them melts the wax and releases the leaden balls. The mode of operation whereby White forms the metallic conducting link between the plates is that the heat of the plates, resulting from the continual maintenance of an arc between them, melts his fusible material in the upper plate so that it runs down between the plates and forms the conducting link. The mode of operation of appellants' device is that the heat of the plates, resulting from the continued maintenance of an arc between them, melts the wax which holds the shot in their holes, and they run down between the plates and form the conducting link. Thus it will be seen that the two devices are constructed upon the same principle that they have the same mode of operation, that they accomplish the same result, and that the means whereby they reach it are mere mechanical substitutes for each other. When the fact was discovered and illustrated by the fusible plug in the carbon plate of White, that material held in the face of a plate until the latter was heated by a persistent arc so that it would melt and release the plug, prevented the formation of the metal conducting link between the plates until, and produced it at, the proper time to discharge the function of the patented device, a shot or a piece of insoluble conducting material of any kind held in the face of a plate by wax, or any other fusible material, so that it would be prevented from making the metal conducting link until the proper time, and would then be released and form the link by the melting of the wax or the other material, so that the function of the device would be properly discharged, became the plain mechanical equivalent of White's fusible plug, and was, in legal effect, the same thing as that plug, because it was an evident mechanical substitute for it, used for the same purpose, and accomplishing the same result. The result is that White's claim of his device was, within the meaning of the patent law, a claim of the device of the appellants as much as of his own device, and he did not surrender or abandon to the public that combination, or any similar mechanical equivalent of his invention.

An attempt is made to escape from this conclusion under the rule that, if the element substituted for the one withdrawn has been discovered since the date of the patent, it cannot be said to be its mechanical equivalent. Gould v. Rees, 15 Wall. 187, 193, 21 L. Ed. 39. Counsel for the appellants says that the shot and the wax have been discovered since the patent to White, and have been secured by a subsequent patent to Frank B. Cook, No. 658,976, dated October 2, 1900. It is true that such a patent has been issued; but it is too plain for argument or serious consideration that there was neither discovery nor invention in perceiving or applying to the device of the complainant the fact that an insoluble metal secured by wax or other fusible material was the mechanical equivalent of, performed the same function and worked the same result as, the fusible plug of White, and could be effectually used as its substitute. The shot and wax were not, therefore, newly discovered elements, but constituted a mere mechanical substitute for the element which White described and claimed.

The second position of counsel for the appellants is that they do not infringe, because, when attention is paid to the parts which really do the work, their device does not accomplish its result in the same way as does that of the complainant. Machine Co. v. Murphy, 97 U. S. 120, 125. 24 L. Ed. 935, Cahoon v. Ring, Fed. Cas. No. 2,292, 1 Cliff. 592. It is contended that in the combination of White the fusible material forms the conducting link between the plates, while in the device of the appellants the fusible material (the wax) does nothing at all, but is simply used to hold the shot in place while the machine is constructed. There is testimony in the record in support of this statement of the purpose and use of the wax, but it is not convincing evidence. The patent to Cook, in practical accord with the description in which the device of the appellants is constructed, shows clearly that the purpose of the wax was not to hold the leaden balls until the combination was made, but to withhold them after its construction so that they would not close the circuit until the wax was melted into a liquid by means of the heat created by the abnormal discharge of the current across the dielectric between the plates, and then to permit them to make the conducting link and close the circuit as in the combination of White. One witness testifies that in practice he thinks the burning away of the silk occurs before the melting of the wax. The court below reached the conclusion that the testimony of this witness was the truth; that the silk dielectric is sometimes burned away at a point which would permit the loose balls to come together, although the heat is not sufficient to melt the wax. In view of the evidence to which reference has been made, this finding of fact ought not to be disturbed. The patent to Cook is of much greater value as evidence of the purpose and operation of the wax than the testimony of interested witnesses after this litigation had commenced. We accordingly adhere to the view of the court below that the purpose and effect of the wax was to hold the conducting material until the heat generated by the arc melted the wax and released the shot, so that they would run down and form the conducting link between the plates. In this state of the case, the only difference in the operation of the two devices to form this conducting link is that in the one the fusible material, when it

113 F.—42

melts, not only releases the material which forms the conducting link, but itself becomes that link, while in the other the only function of the fusible material is to hold until it melts, and then to release the shot which become the conducting link between the plates. This, however, is an immaterial difference. It is not of the essence of the invention or of its operation. The essence of that part of this invention which relates to the fusible plug—the mode of operation which distinguishes it from all other devices—is the holding of a conducting material out of the circuit in one of the plates by means of a fusible material until an arc heats the plate and melts the fusible material so that it releases the conductor, and causes it to form the link between the plates. This mode of operation—this distinguishing characteristic of the invention—the appellants have completely appropriated. Their device holds the conducting material out of circuit in the same way that White's does, —by a fusible material. It releases it in the same way that White's device does,—by the melting of the fusible material. And it forms the conducting link between the plates in the same way that the combination of White does,—by permitting the conducting material to run down between the plates and in contact with them at the appropriate time. The two devices were constructed for the same purpose. They have the same mode of operation, and they accomplish the same result in the same way, by equivalent mechanical means. The appellants cannot escape liability for the appropriation of the entire essence of this invention by the slight change they have made in a single element of the combination which embodies it.

This conclusion has not been reached without a careful consideration of all that has been said and written concerning the effect of the silk dielectric, its partial burning, and its carbonization in the operation of the device of the appellants. But inasmuch as the complainant's patent clearly covers a potential discharger using a silk dielectric in the place of the slotted mica partition, our conclusion is that the discussion of the operation and effect of the silk dielectric is not material to the determination of the issue presented in this case, and for that reason it has been pretermitted. This case stands as it would have stood if the device described in the patent had contained a silk dielectric in the place of the slotted mica partition. The appellants can reap no advantage and can escape no liability on account of the peculiarities of the operation of the silk which they have substituted for the mica partition of White.

The decree below is sustained by the evidence, is warranted by the law, is equitable and just, and it is affirmed.