### ACME MOTOR SHIELD CORPORATION et al. v. ROBERTS MFG. CO.

(District Court, D. Connecticut. February 21, 1923.)

No. 1551.

1. Patents ⬡⟾72—Awnings and shades for stationary structures are in different class from automobile visors.

Awnings and shades for stationary structures are in a different class from visors for automobile windshields, in view of the strains to which the latter are subjected, and, therefore, patents relating to the former field are too remote to affect a patent in the latter field.

2. Patents ⬡⟾328—1,180,124, claim 1, for automobile windshield visor, held valid and infringed.

The Foedisch patent, No. 1,180,124, claim 1, for a visor to be attached to an automobile windshield, held to disclose invention, not anticipated by the prior art, and to be infringed by defendant's device, which was designed by it with the plaintiff's device in front of it, to accomplish the same purpose without infringement, and which varied from it only in the form of the attachment of the roller.

3. Patents ⬡⟾36—Utility may decide doubt as to invention.

In case of doubt as to whether a new combination of old elements discloses invention, the fact that it has proved to be useful, and is an advance on any previous arrangement, may be sufficient to show invention.

4. Patents ⬡⟾36—Invention is question of fact.

The question as to whether or not there is invention in an improvement is one of fact.

5. Patents ⬡⟾283(1)—Nonuser by patentee does not justify infringement.

The fact that a patentee has made no use of his patented invention does not justify infringement by another, though it does prevent the patent from being entitled to the liberal construction which commercial utility might show it entitled to.

⬡⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Patents ⬦⟶236—Change of form has little weight on question of infringement.**
Except where form is of the essence of the invention, a difference in form has but little weight on the question of infringement.

In Equity. Suit by the Acme Motor Shield Corporation and others against the Roberts Manufacturing Company for infringment of a patent. Decree rendered for plaintiffs.

William B. Greeley and Worthington Campbell, both of New York City, for plaintiffs.

Henry E. Rockwell, of New Haven, Conn., for defendant.

THOMAS, District Judge. This is the usual patent suit for infringement of letters patent No. 1,180,124, issued April 18, 1916, to Charles O. Foedisch and Roy J. Foedisch, the inventors, for improvements in windshield attachments. The particular attachment which is the subject of this suit is an automobile accessory, known in the trade as a visor, and is primarily intended, like the visor of a cap, to shield the eyes of the driver from the glare of light ahead.

The patent was assigned to the plaintiff corporation, and an exclusive license granted to it to manufacture under the patent. The original agreement granting an option to purchase was executed April 13, 1921, between the Foedisches and the Acme Company. The option was exercised and final payment made under it on May 13, 1922.

The defenses are invalidity, nonuse, and noninfringement. The defendant, further denying that the plaintiffs' assignor was the original inventor of what was patented to him, sets forth various prior patents containing the invention, or material parts thereof, including the French patent to Houdaille & Sabot, No. 418,741; United States patent to Brower, No. 1,109,197; United States Patent to Barnes, No. 1,094,049; British patents to Higgins, Nos. 27,528 and 1,968; and British patent to Kennedy, No. 15,519. The answer also denies utility or value, and alleges that the subject-matter of the invention was, prior to the alleged invention, used by W. B. Hanlon, Pittsburgh, Pa., Edward S. Brower, Ridgewood, N. J., and Theodore F. Browne, Montclair, N. J., and others.

Only claim 1 is in suit. It is as follows:

"In a device of the character described, the combination of a roller, a frame extending longitudinally of the roller and having ends in which the roller is mounted, an extensible curtain on said roller, supporting arms adjustably mounted on the ends of the frame, respectively, to permit them to be shifted in a plane transverse to the axis of the roller, means for holding the arms in adjusted position and means for connecting the free end of the curtain to said arms to hold the curtain extended."

The material facts with reference to the claim for infringement are that Joseph B. McMullen, in December, 1920, organized the plaintiff corporation for the purpose of manufacturing windshield visors. He had previously filed application for letters patent for a device which he designed, but during the course of this application through the Patent Office he was notified of the existence of the patent in suit, and thereupon bought from the Foedisches, for a sum approxi-

---

mating $6,500, the patents and exclusive right to manufacture under them.

Prior to his having received notice of the Foedisch patent, he had conferred with various persons with a view to making suitable arrangements for the manufacture of this device, and accordingly explained the details of it to a Mr. Sylvester Kennedy, an officer of the defendant company. In November, 1920, he left with Mr. Kennedy a sample, parts and drawings of the visor, and on November 28, 1920, discussed the advisability and terms of the manufacture of it with the Ansonia Manufacturing Company, of Ansonia, Conn. On November 30, 1920, McMullen sold one of his windshields to Mr. Peter Kennedy, a brother of Sylvester Kennedy, for use on the former's car. Shortly thereafter satisfactory arrangements were made with the Ansonia Manufacturing Company. Thereupon the plaintiff attempted to recover the sample, parts, and drawings left with Mr. Sylvester Kennedy, of the defendant company. Some delay ensued in the return to McMullen of these articles. Subsequently, on December 16, 1920, the defendant corporation produced a visor which forms Plaintiffs' Exhibits 5 and 6. It was virtually admitted by the defendant that Exhibits 5 and 6 comprise their visor, and that it was constructed by their Mr. Clemens, who testified that he commenced construction of the model visor about December 12, 1920, and that, after he was shown the Acme visor, "my orders were to get a shield that would not infringe on the Acme, but would be better in construction, to answer the same purpose," and that the model was started and completed between December 12 and December 16, 1920.

[1] The state of the prior art at the time the Foedisch application was filed on March 10, 1914, was, substantially, that there was then known a series of sun shades provided with arms to hold a flexible shade in an extended position, and there were also roller curtains and means for connecting the free end of the curtain to the arms. The patents also show window awnings and shades designed for stationary structures, and for vehicles other than automobiles. The Foedisch patent, as described in claim 1 and as testified by defendant's expert, is a roller and frame extending longitudinally with the roller; ends in which the roller is mounted on the frame; extensible curtain on the roller; supporting arms adjustably mounted on the ends of the frame, respectively, to permit them to be shifted in a plane transverse to the axis of the roller; means for holding the arms in an adjusted position; and means for connecting the free ends of the curtain to the side arms to hold the curtain extended. The general class of the patents above mentioned is too remote to affect the status of the patent in suit.

[2] The patents which relate exclusively to automobiles, and the requirements of a vehicle which moves at the speed of an automobile, and which are close enough to be pertinent, are seven in number, viz.: The Acre & Wyatt patent, No. 1,181,715; the patent to Brower, No. 1,109,197; to Barnes, No. 1,094,049; the English patents to Higgins, Nos. 27,528 and 1,968; to Kennedy, No. 15,519; and the

French patent to Houdaille & Sabot, No. 418,741—and they will be discussed in their order.

### Acre & Wyatt, No. 1,181,715.

This patent was issued May 2, 1916, subsequent to the patent in suit, although the application was filed December 5, 1913. This patent is not properly considered as part of the prior art, in view of the date of issuance. In any event, it lacks the extensible arm attached to the frame of the device as in the Foedisch patent, and the roller is attached directly to and mounted on the arms at their lower extremity, in addition to which it is not a unitary structure.

### The Brower Patent, No. 1,109,197.

While the arm may be held in a downwardly inclined position, attached to the windshield at its upper portion, it is of a different classification, in that it does not perform the function of a visor, is of glass construction, and accordingly minus the roller feature, not collapsible, and not properly of the classification under consideration.

### The Barnes Patent, No. 1,094,049.

This patent cannot be included in the devices having the longitudinal frame and adjustable arms, the dash forming the frame and the curtain roller being mounted on the dash, and drawn in an upward direction; the principle and the purpose being so far different as to make it inapplicable as part of the prior art.

### The British Patents to Higgins, No. 57,528 of 1907 and No. 1,968 of 1909.

The first patent is claimed as a device adaptable for attachment to the dash of a motor vehicle extending upwardly in an inclined position therefrom. The container for the curtain is secured to the dash and extends along the dash. It has a curtain roller and some manner of frame to carry it. It lacks the side arms feature, and does not suggest the Foedisch device in its mode of attachment. It contains some of the elements of the patent in suit, as necessarily almost any visor or windshield would, but could not constitute anticipation, and, although it may be a useful device, it is not practical as a device to meet the requirements for use on automobiles. The same is true of patent No. 1,968, issued in 1909. It has no collapsible or extensible frame. Both these devices tend to show that the invention and building of windshields and protectors for drivers were not entirely unknown to those skilled in the art, but there the anticipation ends.

### The British Patent No. 15,519 to Kennedy.

This was issued in 1905, and is an improvement in window screens, and is not adaptable for use as an automobile visor or windshield for obvious reasons. It, like some of those cited, contains many of the elements of the Foedisch patent, but in no manner suggests itself for use as an automobile accessory. It is similar to shades mounted

on street cars, but an examination of the model in evidence, allowing for some differences in constructing the model from the description, convinces one of its inadaptability for the purposes under discussion.

### The Patent to Houdaille & Sabot, No. 418,741.

This patent is dated July 28, 1910, and is the closest approach to the Foedisch device offered for consideration, and a close comparison of the two is necessary. This shows a windshield for a motor vehicle. It consists of a glass frame hinged to the upper end of the windshield and provided with a quadrant, by which it may be held in adjusted position. A shade roller is provided, carrying the shade, which may be extended, and connected by snaps or buttons to the lower edge of the frame over the glass. It is permanently attached to the upper part of the windshield, and has a curtain roller, which is supported by the uprights on the windshield frame. Of this device there are represented six different figures, and the model was made from Fig. 2, but it is claimed that this alone does not show all of the structural elements of this patent. Fig. 4 is claimed to have a swinging frame, rectangular in shape, but which, nevertheless, constitutes a frame extending longitudinally of the roller and having ends in which the roller is mounted on the ends of the frame, respectively, to permit them to spring in a plane transverse to the axis of the roller, and means for holding the arms in adjusted position, and means for connecting the free ends of the curtain to the arms to hold the curtain extended. As a means for securing the forwardly extending arms or frame, there is a slotted quadrant, and a pin attached to the arm extends through this quadrant. Fig. 5 represents a three-sided frame, the forwardly extending arms having free ends which are not joined by a transverse rod. The rod $p$ is secured at the outer end of the curtain, and is provided with hooked ends designed to engage in an opening along the arms. As the frame is swung in an inclined position, the curtain will be automatically extended and rolled back upon a shade roller.

It is claimed that Fig. 5 corresponds closely to the longitudinally extending rod of the Plaintiffs' Exhibits 5 and 6, which are models of the visor manufactured and sold by the defendant. The French patent shows no arms independent of the frame. There are no arms and frame which spring together. The arms swing only with reference to the fixed frame on the windshield, and it is in this fixed frame that the curtain is mounted and the arms are pivoted. In the Foedisch, in the Acme, and in the defendant's visor, the arms which support the curtain are pivoted on the ends of the frame in which the roller is mounted, and this frame constitutes the member which binds all of the parts into a unitary structure. In the filing of the Foedisch application, the patent examiner cited this French patent, together with Barnes and Brower, in rejecting the original Foedisch application, and subsequently, upon the amended claim of the Foedisches, which now constitutes claim 1, allowed the claim. A careful examination of the French patent shows that it is built into the structure of the windshield itself, that it is incapable of use as an accessory to the auto-

mobile trade, and supports the roller curtain on the entire glass windshield frame, lacking the frame in which the roller is mounted.

All of the elements of the Foedisch windshield or visor can be found in some of the prior patents, and some element or elements in all the above-mentioned patents, and while the question is not entirely free from doubt, and is close, nevertheless the patent in suit seems to fall within the rule laid down by the Supreme Court in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. Mr. Justice Bradley expressed it on page 591 (26 L. Ed. 1177) as follows:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

The manner in which the Foedisches arranged their visor included the following combinations: (a) Making it capable of application as an attachment to automobiles; (b) an accessory, as distinguished from something permanently built into the structure; (c) unitary construction; (d) the rolling curtain type, folding in when not in use; (e) capable of adjustment to meet the convenience of the driver; and (f) capable of being securely fixed, so that it will not rattle or shake in the movement of the automobile, and designed to meet road shocks.

These combinations constitute invention. The problem of avoiding rattling is of great importance, considering the speed, shock, and continuity of use to which an automobile is subjected, and because of this feature many of the patents cited as part of the prior art are eliminated. The Foedisch patent provides an attachment which can be secured to the frame of an ordinary windshield, unitary in structure, and useful for accessory purposes, having the frame upon which all the other parts of the visor are mounted forming one unit—the frame having ends in which the roller is mounted, and the supporting arms secured pivotally on the bearing studs, and means provided for holding the arms in adjusted position; also having means for connecting the free end of the curtain to the arms to hold the curtain extended. The application of the reasoning of the Supreme Court in Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, is particularly pertinent here. Mr. Justice Day, on page 381 of 214 U. S., on page 655 of 29 Sup. Ct. (53 L. Ed. 1034), said:

"It is often difficult to determine whether a given improvement is a mere mechanical advance, or the result of the exercise of the creative faculty amounting to a meritorious invention. The fact that the invention seems simple after it is made does not determine the question; if this were the rule many of the most beneficial patents would be stricken down. It may be safely said that if those skilled in the mechanical arts are working in a given field and have failed after repeated efforts to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor. There is nothing in the prior art that suggests the combined operation of the Golding patent in suit. It is perfectly well settled that a new combination of elements, old in themselves, but which produce a new and useful result, entitles the inventor to the protection of a patent. Loom Company v. Higgins, 105 U. S. 580–591."

The situation in this case may be read upon the words of Mr. Justice Day in the paragraph succeeding the one just quoted, and, if done, that paragraph would read as follows:

"To my mind, Foedisch's method shows that degree of ingenuity and usefulness which raises it above an improvement obvious to a mechanic skilled in the art, and entitled it to the merit of invention. Others working in the same field had not developed it, and the prior art does not suggest the combination of operations which is the merit of the Foedisch invention."

While the device of the Foedisches is far from perfect, they are the first ones to produce the desired result. At the time the Foedisch application was filed, the art had not progressed to any great extent, and the inventors were confronted with many difficulties in producing a visor that could be utilized for the purposes sought. All, or nearly all, of the visors introduced up to that time, were of the windshield type, permanently and rigidly attached and built into the car itself, and the Foedisch foresight in constructing a visor or windshield which later, with variations, became an important addition to the art and the trade involved invention in the ultimate development of their visor.

[3] Their claim received careful consideration during its course through the Patent Office, and the requirements of the Examiner were complied with by the solicitor for the Foedisches, with the result that the patent in suit was granted. The rule as stated by Judge McPherson in Burdett-Rowntree Manufacturing Co. v. Standard Plunger E. Co. (C. C.) 196 Fed. 43, seems applicable here upon the question of presumption of validity and utility. On page 46 he said:

"It is true that the line between a combination and an aggregation is not always easy to draw, and it is also true that the case before us may lie within the twilight zone; but the balance of my judgment is in favor of the patent. The device has proved to be useful. It is an obvious advance on any previous arrangement of signals and motor. * * * These solid advantages are well established, and, as I think, are enough to decide the dispute."

[4] The question as to whether or not there is invention is one of fact, just as Judge Denison pointed out in Concrete Appliances Co. v. Meinken (C. C. A.) 262 Fed. 958, on page 965. He said:

"As upon every such question, there is no authoritative decision which compels one or the other conclusion. The doubtful inference is rather one of fact; but we select and refer to a few instances where invention has been found—by the Supreme Court and by this court—and the facts of which may well be thought to present no stronger inferences in its favor than do those of the instant case. Loom Co. v. Higgins, 105 U. S. 581, 590, 26 L. Ed. 1177; Hobbs v. Beach, 180 U. S. 383, 393, 21 Sup. Ct. 409, 45 L. Ed. 586; Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; National Co. v. Aiken, 163 Fed. 254, 259, 91 C. C. A. 114; Warren v. Owosso, 166 Fed. 309, 92 C. C. A. 227; Morgan Company v. Alliance Co., 176. Fed. 100, 109, 100 C. C. A. 30; Ferro Concrete Co. v. Concrete Co., 206 Fed. 666, 124 C. C. A. 466; International Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569."

I therefore conclude that claim 1 of the patent in suit is valid.

### Nonuser.

[5] The next point relied upon by the defendant is nonuser by the patentees; the claim being that, when no practical use has been

made of the patent, the claim will be narrowly construed, for the reason that in such case the patent lacks the support that comes from public acquiescence. The patent was granted to the Foedisches on April 18, 1916. In 1920 McMullen had devised his visor, and learned from the Patent Office, during the course of his application through that office, that his visor infringed the Foedisch visor. This was the first information that McMullen had of the existence of the Foedisch patent; it being a matter of something like four years after the issuance of the latter patent.

The law on this point presents no difficulties, and is clearly stated by the courts in many decisions. Without going into the question as to whether or not the Foedisch device was ever marketed—upon which the testimony is insufficient—the fact that they may not have seen fit to use the device does not justify the defendant, or any one else, in infringing it. The practical application of the law with respect to nonuser is that the construction of the patent will not be given that liberality which is accorded a patent which has at once gone into extensive use; the presumption then being that the latter has made a real and important contribution to the art. Judge Denison, speaking for the Circuit Court of Appeals for the Sixth Circuit in Troy Carriage Sunshade Co. v. Kinsey Mfg. Co., 247 Fed. 672, stated the rule on page 676, 159 C. C. A. 574, on page 578, as follows:

"If, as is held in the Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, a patent is not to be denied its reasonable and apparent validity and scope merely because its owner had deliberately withheld it from commercial use; much less can such denial be claimed where the first owner, for unknown reasons, did not get it into public use, but where the second owner has put it into very general use. The fact that the second owner discovered the patent in the Patent Office, and made the first move to buy it, and bought it for a small price, cannot be of much, if any, importance. The patent must stand or fall on its own merits."

In the Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, the Supreme Court, citing its decision in United States v. Bell Telephone Co., 167 U. S. 224, 250, 17 Sup. Ct. 809, 814 (42 L. Ed. 144), quotes from the Telephone Case, as follows (210 U. S. 424, 28 Sup. Ct. 753, 52 L. Ed. 1122):

"Counsel seem to argue that one who has made an invention and thereupon applies for a patent therefor occupies, as it were, the position of a quasi trustee for the public; that he is under a sort of moral obligation to see that the public acquires the right to the free use of that invention as soon as is conveniently possible. We dissent entirely from the thought thus urged. The inventor is one who has discovered something of value. It is his absolute property. He may withhold a knowledge of it from the public, and he may insist upon all the advantages and benefits which the statute promises to him who discloses to the public his invention."

The rule and principle expressed in that case is that a patentee is not obliged to manufacture or produce the device described in the patent. Its nonuse should not and does not deprive him of the protection of the patent laws.

Infringement.

The next question is the important one of infringement. The defendant insists that the file wrapper history requires that the claim be so strictly limited that it cannot apply to the defendant's device, and also that the prior art demands a similar limitation. But the testimony of the witnesses indicates clearly the purpose, intention, and the result of the efforts of the defendant. Every element found in the plaintiff's claim is present in the defendant's visor. It has the roller, the extensible curtain on the roller, the supporting arms adjustably mounted, the means for holding the arm in the adjusted position, and the means for connecting the free ends of the curtain to the arms to hold the curtain extended. According to the testimony of defendant's witness Clemens, as set forth on page 21 of the record, the main or only difference as to the feature of design considered original with it is that:

"Instead of being pivoted on the roller rod, it is pivoted at a point away from the roller rod. Around this pivot is the curtain roller, which moves in a slide or slot. It is not pivoted the same as the other visor. The other visor, the Acme visor, is pivoted in the center of the roller rods, in the center of the roller on the center of the rod."

This seems to be, and in fact is, substantially the only difference between McMullen's and defendant's visors. The defendant's witness Clemens designed the defendant's visor, and testified, as already noted, that he constructed his visor with the McMullen visor as a model, and his idea as to the requirements of a visor, as well as the requirements of the trade, was derived solely from an examination of the McMullen visor. Thus we find that the plaintiff is in very much the same position as set forth in the Troy Carriage Sunshade Co. Case, supra. There Judge Denison said (247 Fed. 676, 159 C. C. A. 578):

"Plaintiff's manager devised a windshield and plaintiff put it on the market. It was some time afterwards practically copied by the defendant. Plaintiff's manager undertook to get a patent on his construction, and failed to do so on account of the existence of the Lingley patent, disclosed to him in the Patent Office. Plaintiff then bought the Lingley patent and continued to exploit the device commercially on a very large scale."

McMullen went through identically the same procedure. He devised a windshield, and in attempting to patent it discovered from the Patent Office the existence of the Foedisch patent, and thereupon made arrangements to buy the patent of the Foedisches, and did succeed in buying it for $6,500, and continued to produce his visor, which had every element of the Foesdisch visor. Clearly, if McMullen with his device infringed on the Foedisch device, then any one copying the former would certainly be in the same position.

[6] This brings us to the question as to whether or not the Roberts visor is of sufficient similarity to infringe on the McMullen visor. The question is whether or not the defendant, as outlined by Clemens, has avoided infringement. In this connection the courts have laid down a rule which has been repeatedly quoted with approval. The leading case is Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935, decided in 1877. Mr. Justice Clifford, on page 125 of 97 U. S. (24 L. Ed. 935), said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

And again, on page 125 of 97 U. S. (24 L. Ed. 935), the learned justice said:

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that, if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

This rule has come down through all the authorities to the present time and has been repeatedly quoted by the federal courts. See Kinlock Telephone Co. v. Western Electric Co., 113 Fed. 652, 51 C. C. A. 362; Stockland v. Russell Grader Mfg. Co., 222 Fed. 906, 910, 138 C. C. A. 386; Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017; and substantially in Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586. In view of these decisions the rule is well settled, and the defendant's visor constructed for the identical purpose, doing the same work in substantially the same way, changing only in the form of mounting the supporting arms and the roller, infringes on the visor in suit.

I therefore conclude that the plaintiff's device was patentable, and that the defendant's device is an infringement of claim 1. It follows that the relief prayed for by the plaintiffs ought to be granted; and it is so ordered.