The judgment must be reversed and the cause remanded for a new trial.

ST. LOUIS STREET FLUSHING MACH. CO. et al. v. AMERICAN STREET FLUSHING MACH. CO.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1907.)

No. 2,507.

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

To accomplish a new and useful result within the meaning of the patent law (Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382]), it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way; and, if the value and effectiveness of a machine are substantially increased by a new combination of old elements, such combination is patentable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 27–29.]

2. SAME—EVIDENCE OF INVENTION.

That a defendant charged with infringement of a patent for a machine abandoned the machine it was previously making, and adopted that of the patent, that its engineer claimed to be the inventor thereof, and himself applied for a patent, and that the patented machine has largely superseded others previously in use for the same purposes, are all facts entitled to weight on the question of invention.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 40.]

3. SAME—SCOPE—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

Where an applicant for a patent repeatedly acquiesced in the rejection of broad claims and substituted therefor narrower ones until his application was granted, the owner of the patent cannot be heard to insist that the narrower claims allowed shall cover the same as the broader ones rejected.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 244.]

4. SAME—INFRINGEMENT—STREET FLUSHING CART.

The Ottofy patent, No. 795,059, for a street flushing cart, covers a device for scouring and flushing streets by forcing water under pressure from a tank located on a moving cart, connected by a pipe extending downward to near the surface of the street, forward of the rear wheels, to nozzles having narrow elongated delivery apertures, and so adjusted that the water is forced out of the apertures in a flat sheet nearly parallel with the surface of the street in a forward and lateral direction, so as to loosen up the dirt and force it away to the sides of the street, and into the gutters, without injury to the surface of the street. The combination of parts by which such result is effected was not anticipated, and discloses invention, but the patent is limited by the prior art to the combination and means shown for producing such flat stream nearly parallel to the street. As so construed *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

James A. Carr (John D. Johnson and Charles Claflin Allen, on the brief), for appellants.

Mr. Clifton V. Edwards, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a suit to enjoin infringement of United States letters patent No. 795,059, granted July 18, 1905, to complainant, the American Street Flushing Machine Company, as assignee of L. F. Ottofy, the inventor. The decree below was for complainant, and defendants appeal.

The object of the invention, as stated in the specification, "is to devise a street flushing cart in which the discharge of the water is easily and accurately controlled by the driver, in which the delivery of the water shall be such as to secure the maximum washing effect without excessive use of water and without damage to the streets," etc. The narrowest claim of the patent and the one which best discloses the principle and means for producing the new result of the invention is the third, and is as follows:

"(3) In a traveling street washing machine, the combination with a tank adapted to contain water under pressure and mounted upon forward and rear supports, of a nozzle or nozzles located sufficiently near the plane of the points upon which the machine is supported to be substantially concealed from view, and having narrow elongated delivery apertures which open laterally toward the front of the machine and are substantially parallel to said plane, said nozzles being constructed and positioned to deliver water under pressure at the side or sides of the machine nearly parallel to said plane, forward and laterally of the rear support and avoiding the front support."

The other broader claims of the patent, in the view we take of the case, need not be specially referred to.

The specification describes the invention as growing out of the necessity of localizing—

"the distribution of water so as to have it strike with considerable velocity at an angle depending upon the nature of the surface so as to have first a scouring and then a flushing effect to carry off before it the loosened material. * * * The nozzles are located close to the ground within a few inches and are directed outwardly and forwardly. They are also between the forward and rear wheels and substantially underneath and concealed by the tank. In operation, therefore, the water is delivered free of the wheels under easy observation by the driver and at the same time the stream is not readily noticeable by pedestrians or passing vehicles. At the same time the water is delivered in a flat sheet nearly parallel with the street and washes the dirt forward and outward without injuring the pavement."

Taking the claims and the specification together, we find the invention is for a device for scouring and flushing streets consisting of and resulting in forcing water under pressure from a tank located on a moving cart connected by pipe to a nozzle or nozzles having narrow elongated delivery apertures, extending downward from the tank and to a position near to the surface of the street forward of the rear wheels, and so adjusted that the water is forced out of the apertures in a flat sheet nearly parallel with the surface of the street in a forward and lateral direction, so as to loosen up the dirt and simultaneously force it away to the sides of the street and into the gutters, without injury to the surface of the street.

There is no claim that any of the elements of the patent are new. The tank, the water under pressure, the nozzle, the delivery apertures, and the means of adjustment are all old, but the contention is that the particular combination of these elements in the patent produces a new and useful result, and is patentable. The new and useful result claimed is the effective loosening up of dirt and material on the street and washing them off into the gutter by one action without injury to the street. To accomplish a new and useful result within the meaning of the patent law (section 4886, Rev. St. [U. S. Comp. St. 1901, p. 3382]), it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way. If the value and effectiveness of a machine are substantially increased, the new combination of old elements, which does it, is patentable. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970, 29 L. Ed. 1017; Anderson v. Collins, 58 C. C. A. 669, 122 Fed. 451, and cases cited. The proof does not permit us to doubt that the machine of the patent does the work of scouring and flushing asphalt and other smooth streets in a more effective and satisfactory way than it was ever done before. The flat sheet of water operating nearly parallel to the surface of the street works like a shovel to loosen up the material on the street, and carry it along as the cart progresses, in a forward and lateral direction, so that it finds its way into the gutter on the side of the street. The very oblique angle to the plane of the street at which the nearly parallel stream operates protects the surface of the street from injury by the impact of the water under pressure which would necessarily be occasioned by a more vertically operating stream. The nozzles from which the stream emanates, being in front of the hind wheels, makes the operation easily observed by the driver of the cart and permits of little splashing of the wheels.

But it is contended that the device of the patent is only a mechanical

shifting of existing means which does not involve invention, and that, if it did, it was anticipated by several other patents. The new and beneficial result accomplished by the device of the patent already referred to consisting of the more effective and less injurious way of scouring and flushing streets might afford a sufficient answer to this first contention; but there is more. The defendant company as found by the learned trial court and shown by abundant proof, upon being advised of the features of the Ottofy invention, abandoned its old machine made according to the Murphy patent hereafter to be considered, and adopted the device of the Ottofy patent. Murphy, defendant's patentee, upon being advised of the defects in his machine and the objections made to it which Ottofy later remedied, confessed his inability to obviate them. Pickles, the engineer of defendant company, upon hearing of Ottofy's invention, claimed to be the first and original inventor thereof, applied for a patent therefor, and assigned all rights to defendant. These are all significant admissions by experts, and that, too, against interest of patentable novelty in complainant's device. There is also evidence of more or less cogency that that device has superseded other devices in the few cities which employ scouring and flushing machines in use upon smooth or asphalt streets. These facts are entitled to weight when the question is whether the machine exhibits patentable invention. Keystone Mfg. Co. v. Adams, 151 U. S. 139, 143, 14 Sup. Ct. 295, 38 L. Ed. 103; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 558, 106 Fed. 693, 707; Kinloch Tel. Co. v. Western Electric Co., 51 C. C. A. 362, 113 Fed. 652; Id., 51 C. C. A. 369, 113 Fed. 659, 665. In Krementz v. S. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719, 720, 37 L. Ed. 558, Mr. Justice Shiras, in delivering the opinion of the court, after referring to the contention that the step taken by the patentee was one obvious to any skilled mechanic, says the contention is negatived by the conduct of defendant's president, which was in many respects like that of Murphy and Pickles. His language is:

"The view of the court below that Krementz's step in the art was one obvious to any skilled mechanic is negatived by the conduct of Cottle, the president of the defendant company. He was himself a patentee under letters granted April 16, 1878, for an improvement in the construction of collar and sleeve buttons, and put in evidence in this case. * * * His improvement was to form a button of two pieces, the post and base forming one piece and then soldering to the post the head of the button as the other piece. Yet skilled as he was, and with his attention specially turned to the subject, he failed to see what Krementz afterwards saw, that a button might be made of one continuous sheet of metal, wholly dispensing with solder, of an improved shape, of increased strength and requiring less material."

The chief contention of defendants is that Ottofy is anticipated by several United States patents granted before his application was filed. These will now be briefly considered.

The Van Gaasbeek patent, No. 296,488, dated April 8, 1884, is first claimed to constitute a complete anticipation. That was for an "improved street cleaning machine," and had many of the elements of the Ottofy claims, but one and the most important one it did not have, and that was "the narrow elongated delivery apertures." It delivered the water upon the street from a series of nipples or orifices, so that the

156 F.—37

stream as it came in contact with the surface of the street was made up of a series of jets, and did not form a thin continuous sheet. Van Gaasbeek made no claim that the stream emitted from the nipples should be delivered upon the street nearly parallel to it. The device of that patent operated more like a rake to stir up and afterwards sprinkle the material on the street, than like a flat shovel inclined so as to scoop up and remove it. We do not think it discloses the combination of the patent in suit, or that a device made under it would perform the function of the device of the patent.

The McDade patent, No. 652,547, of date June 26, 1900, is also claimed to constitute a complete anticipation. That was for "new and useful improvements in street sprinkling machines." It lacks the same essential element that the Van Gaasbeek patent did, namely, "the narrow elongated delivery apertures." It could not deliver the flat continuous nearly parallel stream upon the street. It could only deliver the water in jets somewhat spaced apart, and its action while quite sufficient to sprinkle the street, as obviously contemplated by the patent, was inefficacious to serve as a scouring and flushing device.

The Murphy patents, numbered 736,134 and 736,135, are also relied upon as anticipations. The first mentioned is for an improvement in nozzles. The distinguishing feature is the globular head or hollow sphere at the lower end of a discharge pipe of a tank and a delivery aperture consisting of an elongated curved slot cut through the sphere, so as to permit the water under pressure to escape and be precipitated upon the street. The second is for an improvement in street washers. It has, according to the specification, two objects. First, "to provide means for enabling the driver or operator of the machine to ascertain the pressure within the machine while it is in motion"; and, second, "to provide in connection with the machine a sediment collecting trap for collecting and removing the sediment in a machine of this class," etc. These are totally different objects from those stated in the Ottofy specification. The drawings of the second Murphy patent show the globular nozzle and the spherically elongated slot of the first Murphy patent. The patentee doubtless intended to employ in the operation of the machine of his second patent the nozzle and slot of the first one. But he neither claims nor describes in the specification, nor shows in the drawings any device or means for delivering water from the nozzle in a flat even sheet nearly parallel to the surface of the street. Assuming that defendants are right in claiming that the Murphy device shows the location and adjustability of the nozzle so as to throw water forwardly and laterally, and that the little variances between the two devices in these respects are not functional, we think there is a truly functional difference in the arrangement of the parts by which in the Ottofy device a flat sheet of water is delivered nearly parallel to the surface of the street, whereas, in the Murphy device, the water is not delivered in a flat sheet or nearly parallel to the surface of the street at all. The spherical opening or slit in the nozzle from which the water is delivered is such as necessarily produces a spherically formed sheet of water. It is forced upon the surface of the street more like a scoop than like a flat shovel. The curvilinear flood necessarily

sprays and spatters on the sides or lateral edges of the stream, and has effective operation only for a small space at and near its middle. Moreover, the second Murphy patent discloses no means whereby the sheet of water is delivered nearly parallel with the surface of the street. The angle of inclination to the ground is usually about 40 degrees, and this produces a violent and destructive action of the stream upon the surface of the street. It may be well adapted to flush and scour granite or other streets of rough surface which are not easily injured, but it does not show the elements or disclose the means in combination of the patent in suit. Without stopping to comment upon other dissimilarities between the Murphy and Ottofy devices which may or may not be functional we content ourselves with saying that the distinctively advantageous features of the Ottofy device and the combination of means there disclosed whereby he produces the shovel-like flat stream, and applies it nearly parallel to the street, and which constitute the distinguishing principle of his invention, do not appear in the Murphy patent, and for that reason the latter or any device made pursuant to it is not an anticipation of the Ottofy patent.

The foregoing are the principal patents relied on by defendants as anticipations. The others introduced in evidence have been carefully considered, and none of them are found to so nearly approach anticipation as those already considered. Some disclose one element and some another, but none of them, including those already specifically referred to, disclose all the elements or the combination of elements of the patent in suit. For that reason, they cannot constitute anticipations. Bates v. Coe, 98 U. S. 31, 48, 25 L. Ed. 68; Emerson Electric Co. v. Van Nort Bros. Electric Co. (C. C.) 116 Fed. 974.

We are not impressed with the contention that the elements of complainant's claims constitute an aggregation, instead of a true combination. We think there is a clear correlation and coaction between the tank pressure, the location of the nozzles near the surface of the street, the narrow elongated delivery aperture, the flat sheet of water emanating from the aperture delivered nearly parallel to the street forward and in a lateral direction. The delivery of the water forwardly and laterally and in a plane nearly parallel to the surface of the street is directly related to and produced by the coaction of all the elements. The doctrine of Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, and Palmer v. Corning, 156 U. S. 342, 15 Sup. Ct. 381, 39 L. Ed. 445, relied on by defendants, has no application to facts like those disclosed in this case.

On the issue of infringement little need be said. Complainant's expert witness compared a machine shown to have been advertised and used by defendants with the device of the patent and affirmed their similarity both in function and means of performance. No contradiction of that testimony appears in the record, and no claim was made below that defendants' machine was not an infringement of complainant's patent, provided the latter was valid. Practically the only contention aside from that of want of patentable novelty, now for consideration, is that the invention of the patent is limited to a narrow compass. This is entitled to serious attention. The state of the art when

Ottofy entered the field was well advanced. The numerous patents pleaded as anticipations and given in evidence disclose that the art of street flushing and washing and the kindred art of street sprinkling had been much exploited by inventors. The field had been thoroughly worked. The mechanism employed was simple and nothing abstruse or obscure was involved. Streams operating forwardly and laterally had been produced before, but no broad flat stream operating so nearly parallel to the surface of the street as to perform the function of a shovel in scouring and flushing the street had ever been produced. In view of the prior art, the novelty and merit of the present patent rest exclusively in the employment of means and in the combination of elements to produce this flat nearly parallel stream. The patent, therefore, is not a pioneer or primary one in any sense, and the owner is not entitled to much range of equivalents. The claims must be limited in their scope to the actual combination of essential parts as shown, and cannot be construed to cover other combinations of elements or different construction and arrangement. Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Greene v. Buckley, 68 C. C. A. 70, 135 Fed. 520.

That we are correct in this conclusion clearly appears from the contents of the file wrapper in evidence. Ottofy originally claimed (so far as the combination now in question requires us to consider the claims made) forwardly directed nozzles adapted to discharge water forwardly beyond the wheels. This claim, it is observed, was a broad one—to discharge a stream of water in any form and at any angle. The first application was rejected on references and amendments one after another for the period of two years or more followed. One was filed September, 1903, and this is important for our present inquiry. In it a claim was made for means generally like those described in the patent in suit "located sufficiently near the wheel base of the cart to have a forward and lateral scouring action on the street." Here is found a voluntary limitation, namely, that the stream produced should have a scouring action. This application was rejected on the Van Gaasbeek and McDade references, among others, and a new one was filed claiming means "for delivering water laterally and forwardly between the front and rear wheels close to the pavement and nearly parallel thereto." Here is found a further voluntary limitation that the stream produced should be nearly parallel to the pavement. On this application an argument was made by the attorney for Ottofy in which he says:

"The references cited not only cannot accomplish the results accomplished by applicant's cart, but they fall very far short of suggesting the above-named features. McDade and Murphy are the nearest references. If they do not anticipate, then none of the references do. McDade's apparatus is a street sprinkler. * * * If we assume that McDade could deliver the water under pressure, and assume that he changed his stream from a spray to a solid stream, and even to a flat stream, his machine would be useless as a street flusher. The water would strike the pavement at such an angle as to destroy the pavement and there would be no chiselling or scouring effect."

A reasonable and fair interpretation of this argument is that it was intended to secure the allowance of the application on the principle that

the angle of delivery of the water upon the street should, in order to accomplish the results claimed, be lower than in the McDade patent. In other words, that the angle of delivery of the Ottofy patent was so nearly parallel to the street that the pavement would not be injured, and that a chiselling and scouring effect would result from it which would not result from a delivery at an angle like that in the McDade patent. After some amendments unimportant for our present purpose, the application with the claims as they now appear was allowed and the patent in suit issued.

From this history it appears that the patentee repeatedly acquiesced in rejections of his application for a broad claim, and substituted therefor narrower claims, one after the other, upon each rejection, until his application was granted for the means whereby water is delivered under pressure forwardly and laterally nearly parallel to the surface of the street. In such circumstances the owner of the patent will not be heard to insist that the narrower claim allowed shall cover the broader rejected claims. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 40, 14 Sup. Ct. 28, 37 L. Ed. 989; Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 45 L. Ed. 95; Computing Scale Co. of America v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Greene v. Buckley, supra.

The contention that Ottofy's combination of means for producing the flat nearly parallel stream is only a change in location, degree, or shape from the Van Gaasbeek or McDade angle of delivery cannot be sustained. The consideration already given to those patents discloses a difference in the means, a difference in the operation of the means, and a difference in the result between his and their inventions. With such differences his would not constitute an infringement of theirs and of necessity theirs do not constitute anticipations of his. Kokomo Fence Machine Co. v. Kitselman; Greene v. Buckley, supra. The practical difficulty in this case is to definitely declare the extent of complainant's monopoly under its patent. It is easy to say that it shall enjoy a monopoly of the means and the operation of the means found in the combination in question, but this is so general a statement as to be likely to produce misunderstanding in practice. For that reason, we emphasize the fact that the production of the flat stream delivered and operating nearly parallel to the surface of the street is an indispensable element of the invention of the patent. It alone expresses the principle of the invention. The claims, when read in the light of the prior art and the history of the patent in suit as disclosed by the file wrapper, clearly establish that principle; not only so, but the patentee himself so regarded it as appears by the argument of his counsel before the commissioner of patents on the McDade reference. He represented that the angle of the McDade patent say of 20 to 30 degrees to the surface would not give the scouring effect of his nearly parallel stream, but would injure the surface of the street. This representation is not referred to as constituting an estoppel like the abandonment of claims once made and acceptance of others in lieu of them, but as an expression by the patentee, who naturally would best know what the principle of his invention was, concerning that principle.

Some other propositions were ably discussed by counsel and have all been carefully considered by us, but from what has already been said it follows that the decree below was for the right party, and should be affirmed; and it is so ordered.