AMERICAN STREET FLUSHING MACH. CO. v. ST. LOUIS STREET
FLUSHING MACH. CO. et al.

(Circuit Court, E. D. Missouri, E. D.    June 17, 1910.)

No. 5,208.

1. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE—STREET FLUSH-
ING MACHINE.

The only invention disclosed by the Ottofy patent, No. 795,059, for a
street flushing cart, is in the combination with other elements, all of
which are old, of a nozzle of such construction and position as to throw
the water in a flat sheet nearly parallel with the surface of the street in
a forward and lateral direction so as to loosen up the dirt and force it
away to the sides of the street, and on an accounting an infringer is lia-
ble only for the profits realized from the use of such improved nozzle,
over what he might have made by the use of other nozzles that did not
infringe.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec.
Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc.,
of City of New York, 50 C. C. A. 8.]

2. PATENTS (§ 312*)—INFRINGEMENT—PROFITS RECOVERABLE—IMPROVEMENT
PATENTS.

In an accounting for profits a defendant has made by the use of an in-
fringing device which is a mere improvement upon what was known be-
fore and was open to defendant to use, the complainant has the burden
of proof to separate or apportion the profits made from the patented and
unpatented features.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*]

In Equity. Suit by the American Street Flushing Machine Company
against the St. Louis Street Flushing Machine Company and Wil-
liam Ratican. On report of master, and exceptions thereto by defend-
ants. Exceptions sustained.

See, also, 156 Fed. 574, 84 C. C. A. 340.

C. V. Edwards and L. Frank Ottofy, for plaintiff.
Carr & Carr and Johnson & Richards, for defendants.

DYER, District Judge. This cause was begun in this court in 1905.
It was tried by my predecessor, who entered an interlocutory decree
in favor of complainant and referred the matter of accounting to Byron
F. Babbitt, as master. An appeal was allowed to the Circuit Court of
Appeals from the decree here entered in September, 1906. The deci-
sion of this court was affirmed, and the master proceeded to take testi-
mony, and thereafter on the 9th of December, 1909, made his report
and filed a transcript of the evidence taken. The master's report con-
cludes as follows:

"In view of all the foregoing, and by way of summary, I make the follow-
ing findings and recommendations:

"First. I find that the defendant St. Louis Street Flushing Machine Com-
pany has realized from its sales of infringing street flushing machines profits
in the aggregate sum of $4,950, the allowance of which amount to complain-
ant is respectfully recommended.

"Second. I find that the defendant William Ratican has realized on account of his individual infringement of complainant's patent rights profits in the sum of $15,039.03, the allowance of which to complainant herein is respectfully recommended.

"Third. In the absence of any testimony showing, or tending to show, that complainant has sustained any actual damages by reason of defendant's infringement, I find that complainant is entitled to no damages, as such, and that its recovery is limited to the profits severally realized by said defendants, and as hereinabove set forth.

"Respectfully submitted,      Byron F. Babbitt, Special Master."

Exceptions were duly filed to this report, by both the complainant and the defendants. It is this report and the exceptions thereto that is now before the court for consideration.

The Court of Appeals very tersely stated in its opinion (156 Fed. 574, 84 C. C. A. 340) the controversy between complainant and defendants. The court says:

"This was a suit to enjoin infringement of United States letters patent No. 795,059, granted July 18, 1905, to complainant, the American Street Flushing Machine Company, as assignee of L. F. Ottofy, the inventor. * * *

"Taking the claims and the specifications together, we find the invention is for a device for scouring and flushing streets, consisting of and resulting in forcing water under pressure from a tank located on a moving cart connected by pipe to a nozzle or nozzles having narrow elongated delivery apertures, extending downward from the tank and to a position near the surface of the street forward of the rear wheels, and so adjusted that the water is forced out of the apertures in a flat sheet nearly parallel with the surface of the street in a forward and lateral direction, so as to loosen up the dirt and simultaneously force it away to the sides of the street and into the gutters, without injury to the surface of the street. There is no claim that any of the elements of the patent are new. The tank, the water under pressure, the nozzle, the delivery apertures, and the means of adjustment are all old; but the contention is that the particular combination of these elements in the patent produces a new and useful result, and is patentable. The new and useful result claimed is the effective loosening up of dirt and material on the street and washing them off into the gutter by one action without injury to the street."

The court further says:

"Practically the only contention, aside from that of want of patentable novelty, now for consideration, is that the invention of the patent is limited to a narrow compass. This is entitled to serious attention. The state of the art when Ottofy entered the field was well advanced. The numerous patents pleaded as anticipations and given in evidence disclose the art of street flushing and washing, and the kindred art of street sprinkling had been much exploited by inventors. The field had been thoroughly worked. The mechanism employed was simple, and nothing abstruse or obscure was involved. Streams operating forwardly and laterally had been produced before; but no broad flat stream operating nearly parallel to the surface of the street as to perform the function of a shovel in scouring and flushing the street had ever been produced. In view of the prior art, the novelty and merit of the present patent rest exclusively in the employment of means and in the combination of elements to produce this flat nearly parallel stream. The patent, therefore, is not a pioneer or primary one in any sense, and the owner is not entitled to much range of equivalents."

The master recommends that judgment be entered against the defendants separately, as follows:

"Against the St. Louis Street Flushing Machine Company for $4,950, and against William Ratican for $15,039.03."

The first of these recommendations is based upon the profits derived by the company from the sale of 14 street flushing machines, manufactured by it, and sold to various parties. The entire machine, including the nozzle claimed to have been infringed, was manufactured by the defendant. The master is of opinion that the complainant is entitled to all of the profits derived from the sale of the machine, without regard to the value of the particular nozzle infringed. There was no evidence offered by either side (so far as I have been able to discover from the record) to show the profits that came to the defendant from the use of this improved or patented nozzle over what he might have made by the use of other nozzles that did not infringe the patent of complainant. The claims of complainant's patent did not and could not cover the entire machine and to ascertain the profits to defendant, growing out of the use of the patented device, proof must be offered.

In the case of Brown et al. v. Lanyon Zinc Co. (recently delivered by the Circuit Court of Appeals for this Circuit) 179 Fed. 309, the court says:

"The chief complaint directed against the accounting, and the only one which merits particular mention, is that an erroneous standard of comparison was used in measuring the profits realized by the defendant from this infringement. At the outset it is well to observe that the invention in suit did not cover the entire furnace of the Ropp type, as used by the defendant, but only a part of it, consisting of the supplemental chamber wherein the rabble operating mechanism was housed and protected from the direct action of the heat, dust, and fumes while it actuated the rabbles in the main chamber by means of an arm extended through a slot in the intervening wall or floor, and that, although the defendant's use of this improvement was a wrongful use of the plaintiff's property, its use of other parts of the furnace was a lawful use of its own property; that is, of what was open to use by all alike. Therefore, the plaintiffs' interest in the profits derived from the use of the entire furnace was confined to such as arose from the patented feature, the supplemental chamber, and the remaining profits rightfully belonged to the defendant. That is well settled. In McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 463 [12 Sup. Ct. 40, 42 (35 L. Ed. 817)], it was said: 'There is no doubt of the general principle that, in estimating the profits defendant has made by the use of the plaintiff's device, where such device is a mere improvement upon what was known before, and was open to the defendant to use, the plaintiff is limited to such profits as have arisen from the use of the improvement over what the defendant might have made by the use of that or other devices without such improvements.' This is a familiar doctrine announced by this court in a number of cases. Seymour v. McCormick, 16 How. 480 [14 L. Ed. 1024]; Mowry v. Whitney, 14 Wall. 620 [20 L. Ed. 860]; Littlefield v. Perry, 21 Wall, 205 [22 L. Ed. 577]; Elizabeth v. Pavement Co., 97 U. S. 126 [24 L. Ed. 1000]; Garretson v. Clark, 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371]."

In the case of Westinghouse Electric Manufacturing Co. v. Wagner Electric & Manufacturing Co., 173 Fed. 366, 97 C. C. A. 621, the Court of Appeals (Eighth Circuit) quoted Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, as follows:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."

The Court of Appeals then said:

"And upon this question the burden of proof is upon complainant. If he fails to carry this burden, he is entitled only to nominal damages."

The court further said:

"Here the appellant failed to prove by reliable or tangible evidence that the entire value of the infringing transformer as a marketable article was properly and legally attributable to appellant's patented combination embodied therein, and so, in the light of the decisions above cited, and many others, which we have examined, announcing the same rule, we think that the appellant is entitled to recover nominal damages only; in other words, that as part only of the profits made by the appellee are attributable to the appellant's combination, the balance being attributable to the presence of the infringing device of elements not included in that combination, and as the appellant failed to make proof of how much of the total profits was due to the presence of its combination in the infringing device, there is nothing upon which more than a nominal recovery could be grounded."

It seems to me that the principle announced in those various decisions disposes of the question in this case.

Many exceptions are made to the report of the master in this case, but in the view the court takes it is unnecessary to pass upon them.

The report and recommendations of the master upon this branch of the case are set aside, and a judgment for nominal damages only will be entered. A judgment for $1 and costs will be entered against the defendant company.

The recommendation of the master that judgment be entered against William Ratican for $15,039.03 is based upon the profits derived by him from the city of St. Louis on a contract for sprinkling the streets. This amount is found by the master after making certain allowances for the pay of drivers, feed for horses, shoeing, etc. No allowance whatever was made for the use of the machines and the horses that drew them, nor for interest on the capital invested, nor for rent, etc., etc. The total allowance made aggregates $3.94 per wagon. The contract the defendant had with the city was for $6 per day. This left, according to the master's report, a profit of $2.04 to the defendant on each machine. I cannot approve of this finding or the recommendation of the master. The principles of law before referred to as applicable to the judgment recommended against the company are equally applicable to the finding and recommendation against Ratican. The report and recommendation is set aside and judgment for $1 and costs will be entered against the defendant Ratican.

While disagreeing with the master in his report and conclusions, it is but fair to say that the report shows much hard work and careful thought upon his part.

It appears from the master's statement that he has received from the complainant and defendant the sum of $400; the defendants contributing thereto the sum of $150. The master will be allowed the sum of $2,000 for his services. From this amount the sum of $150 paid to him by the defendants will be deducted, and the remainder, to wit, $1,850, will be taxed as costs to be paid by the defendants.