ST. LOUIS UNION TRUST CO. v. STUDEBAKER CORPORATION et al.

(District Court, S. D. New York. May 28, 1913.)

PATENTS (§ 328*)—INFRINGEMENT—STREET-FLUSHING MACHINE.

    The Ottofy patent, No. 795,059, for a street-flushing machine, if valid, *held* not infringed by a machine which does not deliver the stream of water near to and nearly parallel with the surface of the street.

In Equity. Suit by the St. Louis Union Trust Company, as trustee, against the Studebaker Corporation and Studebaker Brothers Company of New York, for infringement of the Ottofy patent No. 795,059 for a street-flushing machine. Decree for defendant.

Decree affirmed, 211 Fed. 980, 128 C. C. A. 478.

C. V. Edwards and J. S. Wooster, both of New York City, for complainant.

Duell, Warfield & Duell, of New York City, for defendants.

HOUGH, District Judge. The specification and claims of a patent, studied in connection with the patentee's own story of what he wished to do, why he wished to do it, and how he accomplished the desired result, seem to furnish the best basis for understanding the precise addition to knowledge made by the invention claimed.

The specification of this patent first alleges a distinction between street sprinkling and street flushing or washing. The patentee says he has devised a "street-flushing cart," although he later concluded to add a contrivance which can make his machine a sprinkler. He does not pretend that flushing carts are generally new; therefore he describes only a particular form of cart, wherein the water is easily controlled, and economically discharged with minimum injury to the street, under the observation of the driver and without detriment to the hauling horses or to passers-by.

His "invention," as distinct from the mechanical embodiment thereof, "comprises" (says he) a water reservoir under pressure, "combined with nozzles" especially constructed for "discharging the water in suitable manner." The nozzle which is suitable shall be made "flat transversely and will consequently throw a broad, substantial, flat stream, which by adjusting the position of the nozzle can be made to strike the pavement at the angle necessary to give the maximum scouring effect." These adjustable nozzles "are located close to the ground, within a few inches, and are directed outwardly and forwardly."

The machine shown is an elaborate three-wheeled affair, plainly designed to give the driver a view of the water flow, and keep the water

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

away from running gear and horses; but the claims are very general, are all for combinations, and all show an intent to apply to any street-washing machine nozzles "substantially parallel" to the street, and having "narrow elongated delivery apertures which open laterally toward the front of the machine," and all constructed to deliver water under pressure "nearly parallel" to the street.

Ottofy's evidence greatly helps out this description. He was associated with one Murphy, who had a patented street-washing machine used to some extent in St. Louis, Mo. This machine Ottofy endeavored to introduce in England, where objections were made to wetting down, not only the fore wheels of the cart, but the horse's heels, and further objection to the force and directness with which the stream struck the pavement. In simple language, Murphy's machine did not spurt in quite the right direction, and it spurted too hard. What Ottofy wished was to improve on Murphy; his three-wheeled cart obviates some of the difficulties, and nozzles near the ground, nearly parallel thereto, and necessarily ejecting water in their own planes, solve (as he contends) the rest.

I do not overlook the fact that the specification does not describe any specific nozzle, nor is any definite form of nozzle claimed; but the nozzle shown in Ottofy's diagrams must eject water in its own plane, there to remain until gravity overcomes initial velocity. I am not informed that any machine such as Ottofy pictures was ever built; what he really did he sums up thus:

"Murphy's nozzle delivered a stream which injured the street; I claim mine delivers one which does not injure the street."

He approved of some other mechanical differences of no importance, but his position amounts to the following proposition: Any street-flushing or washing machine which delivers forwardly a stream of water under pressure, flat, near the ground and nearly parallel thereto, infringes his patent.

Complainant asserts that discussion of this proposition is ended, by the long series of decisions in this circuit and the Eighth. St. Louis Street F. Mach. Co. v. American Street F. Mach. Co., 156 Fed. 574, 84 C. C. A. 340; American Street Flushing Mach. Co. v. St. Louis Street Flushing Mach. Co. (C. C.) 180 Fed. 759; Id., 192 Fed. 121, 112 C. C. A. 582; American Street Flushing Co. v. D. Connolly Boiler Co., 198 Fed. 99, 117 C. C. A. 285. This may be true, yet this is a new record, and the defenses being not only invalidity, but noninfringement, the reasons for prior judgments must be looked into.

The previous decisions have evidently accepted that marked difference between the art of washing streets and that of sprinkling streets which Ottofy assumes in the first part of his specification. No discussion of this matter has been reported. To any one who has ever used a hose to wash down a pavement and then sprinkle the adjacent street, the difference is merely in the direction of one implement; i. e., the hose. The more directly the nozzle is pointed at the ground, and the closer it is held thereto, the greater the washing; obliqueness of angle to the ground, and distance therefrom, produce sprinkling. To any

one brought up to the use of common tools, the idea that to turn a sprinkler into a washer involves invention is merely amusing. But, Murphy having procured a patent for a washer, the thought that any improvement on his machine or method must also be patentable is distinctly traceable in the decision which started this series (Finkelnberg, D. J., District of Missouri).

An improvement on a device itself lacking in invention may contain a patentable idea; but if it is not invention to turn a street sprinkler into a street washer, then it makes no difference if one man effects the conversion in a cleverer manner than another. The mere act of conversion cannot constitute invention. Therefore, if before Murphy and Ottofy there were pressure sprinklers, delivering flat streams parallel with the street, or nearly so, and producing their result by directing such streams backward, it was not invention to change the direction of the stream and shoot it forward. Any one can see that the same stream, discharged at the same angle, through the same nozzle, will sprinkle if shot back, and wash if shot forward. The only difference between sprinkling and washing is that in the first dirt particles receive but one impulse from the driving or falling water, while in the second such repeated impulses are given by the advancing stream that dirt is moved in the direction of advance.

If there was such earlier sprinkler, then to patent in any way the same thing with its nozzle shifted about 180 degrees is to grant a monopoly on a manner of using an old tool—something never, I think, approved in any court. How closely this thought touches complainants' position is clearly shown by the interpretation of the patent given by Adams, J., in the Eighth circuit, and accepted by Ottofy (as he testifies):

"We emphasize the fact that *the production of the flat stream, delivered, and operating nearly parallel with the surface of the street*, is an indispensable element of the invention of the patent."

When complainants' actual machine is compared with Ottofy's described device, the emphasis of the quotation is strengthened. The three-wheeled wagon and the careful avoidance of horse and wheel wetting are abandoned; so that (as above shown from Ottofy's evidence) all that the combination amounts to is that Murphy's stream is better directed through a different, but admittedly old, nozzle.

In this case, reference is made for the first time to the Mengelberg German patent (4331 of 1878). This is a pressure street sprinkler ejecting water to the rear in flat streams near to and parallel with the ground. That any man of ordinary intelligence, with Mengelberg's patent and Murphy's machine before him, could and should be able to plan a street washer exactly covering the only part of Ottofy's combination worthy of consideration, and the only part pressed in any suit on this patent, is, in my judgment too plain for argument.

Eccles' patent, 436,406, was introduced into the previous case in this circuit on motion for reargument in the lower court and not alluded to in the opinion of the Circuit Court of Appeals. It seems to me very instructive, and worthy of more attention than was given it, perhaps owing to its belated appearance. But the matter is made so plain, by

the newly adduced Mengelberg reference, that I must assert my belief that invention is lacking in Ottofy's device.

But even within the very narrow limits judicially laid down for this patent under other evidence, I do not think that defendants are shown to have infringed. What is meant by "near to," and "nearly parallel with," the ground? Such vagueness is not to inure to the benefit of a patentee; he cannot complain if his own lack of precision narrows his own rights.

The patent itself by diagram shows a scoop-shaped nozzle parallel with the ground, and pointing forward and "outwardly"; i. e., away from the fore and aft line of the cart or wagon. The streams from such a nozzle will (theoretically) all strike level ground at the same distance from the center of the discharge. The language of the specification satisfies me that Ottofy's idea was to raise or lower this nozzle, at right angles to the plane of support, and thus produce a greater or less cutting effect, just as a hose is raised or lowered to wash or sprinkle as may be desired.

The defendants set their nozzles at such an angle to the street plane that the forward edge of the stream strikes the ground many times nearer the discharge point than does the after edge (Hammer, D. R., 184; Photo, D. R., 262; Anders, C. R., 182—describes what is evidently the same method of operation). These nozzles as described, pictured, and shown by models on argument are not "nearly parallel" to the street plane, according to any definition of that phrase known to me.

Complainants, however, urge that they set their nozzles in the same way, and the specification shows that Ottofy intended to attach his nozzles by joints enabling them to be "adjusted in any direction horizontally or vertically or to allow the nozzles themselves to be twisted." This is true, but a described capacity for adjustment cannot be treated as an enlargement of the claim. The specification would cover a vertical position of nozzle, but the claims cut that down to something which will "deliver water   *   *   *   nearly parallel to said plane" (i. e., that of the street).

What is meant by "delivering" water is uncertain; complainants treat it as synonymous with "ejecting," whereas defendants insist that since water (or anything else) is not "delivered" until it arrives, the angle of incidence with the ground must be meant. No such refinement on words was ever thought of by the draftsman of the specification. In strictness of definition I incline to think defendants are right; but it is enough for me that on this evidence there is no showing that defendants have either "ejected" or "delivered" a *stream* of water nearly parallel to the street. I think they have done the same thing that complainants probably do in practice—that is, some not calculated, and perhaps noncalculable, part of the stream is ejected nearly parallel with the street plane, at a height which insures incidence with the street at a very obtuse angle.

This angle of incidence varies very little along the falling water edge, because the nearer the discharging water particles are to the reservoir the nearer to 90 degrees is the angle of discharge. This is the necessary

result of twisting the nozzle as defendants do. If complainants have done this, too, they have traveled beyond the limitations of their own patent as interpreted in the cases on which they rely.

Bill dismissed, with costs.