CORN PRODUCTS REFINING CO. v. DOUGLAS & CO.

(District Court, N. D. Iowa, Cedar Rapids Division. August 18, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS OF MAKING LUMP STARCH.

The Moffatt patent, No. 541,941, for a process of forming starch into coherent masses by subjecting starch containing not more than 30 per cent. nor less than 16 per cent. of water to a temperature in excess of 100 degrees F. and less than 160 degrees F. conjointly with pressure is limited with respect to heat to the maximum of 160 degrees stated, which is shown by the specification and proceedings in the Patent Office to be an essential and important element in the process. As so construed the patent is not infringed by the process of the Gudeman patent, No. 789,127.

In Equity. Suit by the Corn Products Company against Douglas & Co. On final hearing. Decree for defendant.

Robert H. Parkinson, of Chicago, Ill. (Hurd, Lenehan & Kiesel, of Dubuque, Iowa, on the brief), for complainant.

Charles A. Clark, of Cedar Rapids, Iowa, and Jones, Addington, Ames & Seibold, of Chicago, Ill., for defendant.

REED, District Judge. The complainant, the Corn Products Refining Company, a New Jersey corporation, sues the defendant, an Iowa corporation, for the alleged infringement of United States pat-

ent No. 541,941, issued July 2, 1895, to Ansil Moffatt, for improvement in the process of forming starch into coherent masses. The complainant derives title to the patent and all rights thereunder from the original patentee. The defendant denies the validity of the patent and its infringement if valid and alleges that it makes lump starch according to the process described in United States Patent No. 789,127, issued May 2, 1905, to Edward Gudeman for the process of making lump starch. The suit was commenced in April, 1905. A large amount of testimony has been taken by both parties, and the cause is now finally submitted upon the questions of the validity of the patent and of its infringement by the defendant.

The process of forming starch into coherent masses for commercial use from cereal grains, commonly called "lump starch," is not new with Moffatt, and he distinctly asserts that he is not concerned with the initial steps of manufacturing such starch, for he says in the specifications of his patent: .

"My process is not concerned with initial steps of manufacturing but in the way in which I prefer to operate it. I take starch from the 'runs,' dry rapidly until it possesses about 20 per cent. of water, and then subject it to the joint action of heat and pressure, whereby it is consolidated into compact masses or 'lumps,' without the necessity of 'crushing,' 'scraping,' or long subjection to heat in dry rooms, as heretofore. Normal air-dry starch contains about 16 per cent. of water and about 84 per cent. of real starch, and it is my aim to leave my starch in a normal air-dry state, when put into the boxes for commerce. Hence I allow a slight excess of water during pressing to allow for evaporation. At ordinary temperatures, if wet starch be subjected to sufficient pressure, nearly all of its water above the 'air-dry' standard may be pressed out, but the starch, although dry, remains in an incoherent mass or powder. Likewise 'air-dry' starch under pressure will not produce coherent 'lumps' at ordinary temperatures; but I have found if dry-air starch, or starch containing a slight excess of moisture, be heated to from 100 to 160° Fahrenheit, and subjected to pressure, it will cohere in masses of greater or less firmness according to degree of temperature and pressure. If pressed at 100° Fahrenheit the 'lumps' are comparatively soft, but if pressed at upward of 140° Fahrenheit the 'lumps' are firm, compact, and durable. Above 160° Fahrenheit the starch is in danger of gelatinization or 'cooking.' The starch produced by my joint application of heat at 140° Fahrenheit, and pressure say of 500 pounds per square inch for five minutes, is distinguishable from that produced by the old method of long drying, in appearance and properties, and the 'lumps' possess the advantage of retaining any given shape. Beside I am enabled to take starch already dried, of any form, and by my process turn it in a short time into 'lump' starch.

" 'Lump' starch being the highest priced starch entering commerce in large quantities, the advantages of my process in this way are easily seen.

"I do not limit myself to the production of starch in coherent masses from cereal grains alone, but include all starch-containing substances or even other forms of starch itself as sources of my raw material.

"Having fully described my invention, what I claim and desire to secure by letters patent is:          ○

"(1) The process of manufacturing coherent masses of starch consisting in the application of pressure to starch containing not more than 30 per cent. nor less than 16 per cent. of water, and subjected to a temperature in excess of 100° and less than 160° Fahrenheit conjointly with pressure, substantially as described.

"(2) The process of manufacturing coherent masses of starch, consisting in reducing the moisture in the starch until approximately only 20 per cent. of water remains, then subjecting the mass to a temperature of approximately 140° Fahrenheit conjointly with pressure."

Neither is the defendant concerned in the initial steps of manufacturing lump starch, for it takes the mass after it has passed through the initial stages or steps of the manufacture and then subjects such mass to a process that results in the completed product of the starch for commercial use.

The steps in the manufacture of lump starch at the time of the Moffatt patent are admitted by both the complainant and defendant and briefly stated are: (1) The evaporating process, by which the moist starch is formed into cubes or blocks and allowed to stand in the open air, or in kilns or ovens, for several days, in order that the excess of moisture in the mass may escape by evaporation, during which period the impurities work to the surface and are subsequently removed. The lumps are then trimmed and subjected to a drying process of several days to reduce the moisture to a normal air-dry condition, containing about 16 to 20 per cent. of moisture; (2) the centrifugal process, by which the moist cubes or lumps of starch are placed in receptacles of a rapidly revolving machine, whereby the excess moisture is expelled by centrifugal force, after which the lumps are placed in an oven or kiln and allowed to remain for several days to dry or cure; and (3) the compression process, in which the wet mass of starch is formed into lumps by means of compression in some sort of a press, whereby the excess of moisture is removed by pressure, and the lumps in a moist condition then subjected to a drying process for several days in an oven or kiln. In each of these processes the excess of moisture in the starch mass is eliminated either by evaporation, centrifugal force, or pressure, after which the lumps are subjected to a drying or curing process in an oven or kiln for several days.

Moffatt by his process proposes to do away with this long drying or curing process of several days and produce a lump starch suitable for commercial purposes after the initial steps are completed, in the short period of five minutes, or some approximately short period of time, by subjecting the moist lumps of starch, containing not more than 20 per cent. of moisture, to the joint action of pressure of about 500 pounds per square inch, and a temperature in excess of 100° Fahrenheit, and less than 160° Fahrenheit (and preferably about 140° Fahrenheit), he says is necessary to prevent gelatinization of the starch cells which, according to his teachings, will seriously injure, if not destroy, the completed starch product for laundry purposes.

The defendant by its process of manufacturing lump starch for commercial use, after the initial steps have been taken, whether it be according to the Gudeman patent or not, deliberately subjects the moist lumps of starch containing about 20 per cent. of moisture to a temperature in excess of 160° Fahrenheit and from 180° to 200° Fahrenheit for the express purpose of producing incipient or initial gelatinization of the starch cells (which is a substance in the nature of glue) to cement or bind the starch particles together in the completed commercial product. This is an essential difference, it claims, between the process of Moffatt and the process practiced by it.

The testimony is voluminous, and it cannot be adequately re-

viewed within the proper limits of an opinion of a trial court; but an excerpt from the testimony of one of the defendant's experts will show the difference, as claimed by the defendant, between the process of Moffatt and that practiced by it in the manufacture of lump starch. Dr. Doerflinger, one of defendant's experts, after stating the various steps practiced by the defendant in making lump starch for commercial use, summarizes them as follows:

"(1) Finely ground cornstarch containing about 20 per cent. of water is heated and agitated in a steam-jacketed covering mixing machine at a temperature above that at which the gelatinization of cornstarch begins. A portion of the starch cells are broken down by the heat and moisture, forming a binder of gelatinized starch, which becomes disseminated throughout the mass, coating the ungelatinized cells.

"(2) The charge from the cooker, while still hot, is compressed at a pressure of a low order of magnitude, while the binder is in a fluid condition. This serves to compact the charge and bring the gelatinized binder into close contact with the starch particles. The charge of starch in the cylinder is confined under pressure.

"(3) The starch in the cylinder is then removed from the press and is allowed to cool under pressure. During the cooling the binder hardens and sets, cementing the mass into a solid block.

"(4) The block of starch is removed from the cylinder, broken up, and the pieces dried in a kiln, and are finally taken out, sorted, and packed for market."

A question was then asked the witness as follows:

"Q. 13. Please compare the defendant's method of making lump starch as described by the witnesses Heede and Johnson on behalf of the complainant, and Staring and Smith on behalf of the defendant, with the Moffatt patent in suit, and state whether in your opinion the defendant's method is or is not that described by the specification and recited by the claims of the said patent, giving your reasons for any opinions you may express."

To which he answered:

"A. The process recited in the specification and claims of the Moffatt patent in suit consists of a single operation: 'The application of pressure to starch containing not more than 30 per cent. nor less than 16 per cent. of water and subjected to a temperature in excess of 100° and less than 160° Fahrenheit conjointly with pressure.' Moffatt aims to leave his starch in a normal air-dry state when taken out of the press. He depends for the formation of his lumps entirely upon the force of cohesion. Any chance of gelatinization he carefully avoids. In the process of Moffatt the heating and pressing are conjoint. His pressure is of a high order of magnitude. In applying pressure and a heat of 140° Fahrenheit jointly, he uses a pressure of 500 pounds per square inch for five minutes. Moffatt's preferred degree of heat is a temperature of 140° Fahrenheit. The process of the defendant as described by complainant's witnesses Heede and Johnson and defendant's witnesses Smith and Staring is different in mode of operation and in principle from that described and claimed in the Moffatt patent in suit. It is not the process described in the Moffatt patent in suit. The process of the defendant depends for its success upon the formation of a binder of gelatinized starch. In the process recited and claimed by the Moffatt patent in suit the formation of lumps is due to the force of cohesion. In that of defendant's it is due to the force of adhesion caused by the cooling and setting of a fluid binder of gelatinized starch. The process recited in the specification and claims of the Moffatt patent in suit uses a pressure of a high order of magnitude, while the process of the defendant uses a pressure of a low order of magnitude. In the process recited by the specification and claims of the Moffatt patent the application of heat and pressure is joint, while in the process of the defend-

ant there is no joint application of heat and pressure. To operate the process of the defendant it is necessary to use temperatures which are much higher than 160° Fahrenheit, which is especially warned against in the Moffatt patent in suit."

Others of defendant's experts agree with him.

After the parties had stipulated in regard to certain matters, Dr. Doerflinger was recalled by the defendant, and he testified as follows:

"Q. 1. It has been stipulated that the pressure exerted by the platen against the starch in the presses as employed by defendant, based on some recent calculations of Prof. G. F. Gebhardt, of the Armour Institute of Chicago, is between 216 and 230 pounds per square inch; considering defendant's process as practiced at defendant's plant at Cedar Rapids, and assuming that the pressure exerted by the platen against the starch in the presses is between 216 and 230 pounds per square inch or thereabout, what is your opinion as to whether said process so practiced is, first, substantially the process disclosed in the Moffatt patent in suit, No. 541,911, and, second, substantially the process disclosed in the Gudeman patent, No. 789,127, giving your reasons for any opinion you may express?

"A. In my opinion such a process would be substantially the process of the Gudeman patent, No. 789,127, and would not be the process of the Moffatt patent in suit, No. 541,941. My reasons for this opinion have been set forth at length in my deposition heretofore given in this case. I consider the vital distinction between the Moffatt process and defendant's process to be this: Moffatt proposes to form lumps of starch by pressure sufficient to produce cohesion of the starch granules; the heat being cautiously applied so as never to exceed 160° Fahrenheit, so that absolutely no gelatinization may occur. My experiments, to which I am referring in my former depositions, show that a high order of pressure is necessary to produce lumps by cohesion, such as 1,400 pounds per square inch with starch containing 41 per cent. water, 2,000 pounds with starch containing 21 per cent. water, etc. The pressure having been retained not for five minutes, as suggested by Moffatt, but for many hours. See my answer to Q. 20, p. 206, of the printed deposition. Defendant's process is based upon a different principle, and a new discovery, as I have pointed out in my earlier deposition in analyzing the process of defendant, and comparing the same with the prior art. Defendant heats the starch to a temperature substantially above 160° Fahrenheit (that is, to 190 to 200° Fahrenheit) for a new and definite purpose, to wit, to produce an initial gelatinization of the starch granules to thereby form in situ a binder or cementing agent. The starch with the binder so formed is then subjected to a pressure of what I have termed a low order of magnitude to bring the binder into intimate contact for a prolonged period while the starch is cooling off, about 24 hours to permit the binder to firmly set with a firm and compact starch lump, as the result. In defendant's process the pressure is of secondary importance. The pressure need be only such as will hold the granules in intimate contact while the binder is setting. The consideration of primary importance in defendant's process is the temperature to which the starch is subjected, which must be over 160° Fahrenheit in order to definitely produce a binder by gelatinization; the binder having been thus formed, any adequate pressure may be applied and maintained during the setting of the binder. The Gudeman patent mentions 20 pounds per square inch, but any higher pressure may be employed without departing from the essential spirit of the process, the vital characteristic of which is maintaining under suitable and adequate pressure of a mass of starch containing a gelatinized binder for a period of time sufficient to permit the binder to cool and set and harden to form the lump. A pressure of 216 to 230 pounds per square inch on the starch in the press, while more than would be absolutely necessary, would still be a pressure of a low order of magnitude, as I have defined that term in this art, which would serve to compact the mass while the binder is setting and would therefore, in my opinion, be such a pressure

as, employed in connection with defendant's binder, formed in situ, would realize the Gudeman process. This pressure would be below the higher order of pressure, as defined by me, necessary to form an effective lump by cohesion in the absence of the binder. The Moffatt patent in suit does not contemplate the formation of a binder in situ by gelatinization but contemplates strict and definite precaution to prevent the temperature conditioned where gelatinization would be at all possible. Moffatt relies wholly upon cohesion of the granules to produce the lump. There is nothing in the Moffatt patent, even suggestive of an essential feature of the defendant's process, which contemplates the holding of the starch under pressure for a prolonged period while the starch is cooling off and the binder is setting. This step is vital to the formation of starch lumps by defendant's process, and no such step is mentioned in the Moffat patent or remotely suggested. The Moffatt patent, on the contrary, as I have shown, contemplates subjecting starch to heat less than 160° Fahrenheit while in the mold under pressure for five minutes, then removing the starch mass from the mold. Moffatt says this will produce lump starch, but my experiments prove the contrary. As I have shown by my experiments, a pressure of 500 pounds per square inch for five minutes, mentioned in the Moffatt patent, will not produce lump starch. In my answer to R-D Q. 132 in a former deposition, I have defined the difference between the pressure of a low order, which is sufficient for the process of defendant, and a pressure of a high order, which is necessary for forming lumps by a process of cohesion. Manifestly a pressure such as is contemplated by the present question is a pressure of a low order of magnitude, as defined by me in answer to R-D Q. 132 above mentioned.

"Q. 2. It has been stipulated that the pressure exerted by the platen against the starch in the presses, as employed by complainant during the progress of this suit, as calculated by Prof. Gebhardt, is approximately 313 pounds per square inch; considering the process practiced by complainant at its Pekin factory and assuming that the pressure exerted by the platen against the starch in the presses is approximately 313 pounds per square inch or thereabout, what is your opinion as to whether said process as practiced is, first, substantially the process disclosed in the Moffatt patent in suit, No. 541,941, and, second, substantially the process disclosed in the Gudeman patent, No. 789,127, giving your reasons for any opinions you may express?

"A. For the reasons stated in answer to the last question, it is my opinion that such a process would not be the process disclosed in the Moffatt patent in suit, No. 541,941, but would be substantially the process set forth in the Gudeman patent, No. 789,127.

"Q. 3. Considering the process practiced by complainant at its Argo factory, and assuming that the corn from which the starch is made has been treated by the so-called acid process, that the pressure exerted by the platen against the starch in the presses is approximately 313 pounds per square inch or thereabout, and that the temperature of the starch in the cylinder of the press immediately before pressure is applied is approximately 198° Fahrenheit, what is your opinion as to whether said process so practiced is, first, substantially the process disclosed in the Moffatt patent in suit, No. 541,941, and, second, substantially the process disclosed in the Gudeman patent, No. 789,127, giving your reasons for any opinions you may express?

"A. The Argo process of making lump starch as practiced by complainant is, so far as concerns the temperature, much the same as that employed by defendant at Cedar Rapids. Defendant heats to a temperature in the neighborhood of 200° Fahrenheit in the cooker, giving a temperature around 180 to 190° Fahrenheit in the press cylinder, whereas the complainant's press cylinder temperature is 198° Fahrenheit or thereabout. With the starch heated to this temperature, a binder of gelatinized starch will result, as set forth in the Gudeman patent. The pressure is somewhat higher than that of defendant's, as stipulated, but the pressure employed, although unnecessarily large, will serve to compact the mass during the period the binder is setting and thereby produce lump starch by the adhesion plan. It is my opinion, therefore, that the process described in this question is substantially the process of the Gudeman patent, so far as concerns essentials, and is not substantially the process of the Moffatt patent in suit."

The testimony of the complainant's experts, of course, does not agree with that of the defendant's witnesses; but the complainant and some of its experts are driven to the contention that the temperature of 160° Fahrenheit, to which the lump starch may be subjected in the final step of the Moffatt process, is not intended as the limit of the degree of heat that may be applied to the moist lumps under that process; but that such degree is stated simply as a warning to those who may practice the process that it is not safe to subject moist starch to a greater degree of heat for fear of injury to and waste of the completed starch product. If that is true, Moffatt was unfortunate in the language used to express such thought. But the specifications and claims of his patent show beyond any doubt that his purpose was to not cause gelatinization of the starch cells at all because of the waste of material that such gelatinization would cause, and its effect upon the completed product for commercial use. His purpose is more clearly stated in the file wrapper and contents of his patent. In a communication to him from the Patent Office the examiner said:

"Claim 1 (as submitted by Moffatt) presents a mere double use of the processes covered by the references of record. In view of these references, there is no invention in the broad idea of subjecting any composition of matter to heat and pressure for the purpose of consolidating it into cakes or tablets. * * * Applicant's process, as described, consists in subjecting starch containing about 20 per cent. of water to heat at 140° Fahrenheit and pressure of 500 pounds per square inch for five minutes, and as admitted in the specification, as well as in the argument presented, the moisture, heat, pressure, and time are conditions in the process which must be observed within substantially the limits specified in order to obtain the desired result. In view of these facts, claim 1 is broader than the invention disclosed, while claim 2 is not sufficiently restricted to the limits of moisture, pressure, and time which must be observed to render the process operative. * * * The claims are rejected because in their present broad and indefinite form they present nothing patentable over the state of the art as disclosed in the references of record. * * *"

In answer to this communication Moffatt by his attorney of record said:

"* * * Again the degree of moisture below 16 per cent. detracts from the weight of the starch and results in a corresponding financial loss. The temperature and pressure are also correlative. The maximum temperature for starch containing over 16 per cent. of water can safely be placed at 160° Fahrenheit, as above that degree of heat a physical change will take place wholly defeating the purposes of the process. * * *"

Moffatt then amended his claims to read as they appear in the patent, and the patent was allowed. That it was Moffatt's purpose to limit the maximum degree of heat to which the moist starch should be subjected under his patent, and that he deemed such limit essential to his process, admits of no doubt under the specifications and claims of his patent and his communication to the Patent Office above referred to, while the purpose of the defendant by its process in subjecting the moist starch to a much higher degree of temperature was to cause a "physical change in the starch cells" to a certain extent for an entirely different purpose than Moffatt intended to accomplish by preventing such change. It was Moffatt's right to limit by his claim the

maximum degree of temperature to which the moist starch should be subjected in the practice of his process; and, having done so to meet the requirements of the Patent Office, he cannot now be permitted to say that such degree of temperature is not an essential element of his process. Corbin Lock Co. v. Eagle Lock Co., 150 U. S. 38–40, 14 Sup. Ct. 28, 37 L. Ed. 989; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609–617, 27 Sup. Ct. 307, 51 L. Ed. 645; Brill v. St. Louis Car Co., 90 Fed. 666, 33 C. C. A. 213; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693–714, 45 C. C. A. 544; St. Louis Street Flushing Machine Co. v. American Street Flushing Machine Co., 156 Fed. 574–581, 84 C. C. A. 340.

The complainant urges with much persistence that the higher degree of heat to which the defendant in its process subjects the moist lumps of starch is immaterial, for by its cooling process it subjects the starch conjointly to the degree of heat and pressure stated in the Moffatt patent, and thereby infringes that patent whenever it continues the pressure conjointly with a temperature of 160° Fahrenheit and below to 100° Fahrenheit, though its pressure may be less than complainant applies; and that defendant's claim of gelatinization of the starch for the purpose of more firmly cementing together the starch cells in the completed product is a mere pretext to evade the charge of infringement of the Moffatt patent. If the only purpose of the defendant in the practice of its process was to subject the moist starch to a degree of heat only slightly in excess of the limit fixed by Moffat, and the pressure somewhat less, thereby causing only somewhat more of a waste of the starch mass, there would be force in complainant's contention. But the testimony decisively preponderates in favor of the defendant upon this contention of the complainant and its experts and clearly shows that the gelatinization of the starch cells in defendant's process does operate in a substantial degree to more firmly cement or bind together the starch cells in its completed product without injuring that product for commercial use. Moffatt having fixed the maximum degree of heat to which the raw material used in the manufacture of lump starch shall be subjected under his process, any material departure by others in the use of a higher degree of heat in the manufacture of such starch is a process different from that described in his patent and is not an infringement thereof.

Counsel for complainant cite and rely largely upon the case of Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279, as sustaining their contention. In this case the court overruled its former decision in the case of Mitchell v. Tilghman, 19 Wall. 287, 22 L. Ed. 125, in which the same patent was involved. Mitchell v. Tilghman was decided upon the ground that the apparatus or means described by Tilghman for heating the water in the practice of his process was an essential element or ingredient of that process; and, inasmuch as Mitchell used a substantially different apparatus for heating the water in the practice of his process, it was held that he did not infringe Tilghman's patent. In the subsequent case of Tilghman v. Proctor, 102 U. S., it is held that the Tilghman patent was for a process only and not for the apparatus or mode of applying the process pointed out in the specifications, as held in the former case. It is to be observed that in the Tilgh-

man patent the degree of temperature of the water to be used in the process described by him is not an essential element or ingredient of his process. Mr. Justice Bradley, speaking for the court, said at page 732 of 102 U. S. (26 L. Ed. 279), of the opinion:

"Finally the defendants argue that they only use a low degree of heat and pressure compared with that pointed out by the (Tilghman) patent, namely, only about 310° Fahrenheit instead of 612°. The precise degree of heat, as we have seen, is not of the essence of the patent. The specification only claims that a high degree of heat, such as would be sufficient to melt lead, is most effective and rapid in producing the desired result, but suggests a trial of the apparatus employed with different degrees of heat so as to ascertain that which is best for each particular kind of fat. 'By starting the apparatus,' the language is, 'at a low heat, and gradually increasing it, the temperature giving products most suitable to the intended application of the fatty body employed can easily be determined.'"

It is obvious that the particular degree of heat mentioned by Tilghman in his specification was a suggestion only and was not deemed by him an essential ingredient or element of his process, while in the Moffatt patent the degree of heat described by him to meet the requirements of the Patent Office is, as before stated, an essential element of his process.

The defendant contends, and its proof shows, that it manufactures lump starch according to the process described in the Gudeman patent, No. 789,127. This patent is some years later than Moffatt's, is presumptively valid, and not an infringement of the process described by Moffatt. The burden is upon the complainant to overcome this presumption, and the conclusion under the testimony is that it has failed to do so.

The defendant further contends that the Moffatt process has never been put into actual practice; that it is a mere paper patent and a failure commercially; that Moffatt himself and a corporation of which he was a member attempted without success to manufacture lump starch according to its teachings; and that complainant does not use it in the manufacture of lump starch for commercial use. It also contends that it is anticipated by a number of prior patents, which it sets forth in an amendment to its answer, and is therefore void. In the view of the testimony it is unnecessary to consider this branch of the case, for, admitting without deciding that the patent is valid, the conclusion under the testimony is that defendant does not infringe the same.

The bill should therefore be dismissed on the merits, at complainant's costs, and it is accordingly so ordered.